**Bonnie Bryan MAYOR, Appellant,**

v.

**Vidal GARCIA, Appellee.**

No. 06–02–00159–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 21, 2003.

Decided April 16, 2003.

Dale M. Tingleaf, Tingleaf & Associates, Houston, for appellant.

W. McNab Miller III, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

This case involves a dispute over a land sales contract. Bonnie Bryan Mayor, the seller, appeals a jury verdict and final judgment granting specific performance in favor of Vidal Garcia, the buyer. Mayor presents four points of error: (1) whether the property description in the land sales contract was insufficient under the statute of frauds as a matter of law; (2) whether the trial court erred by not submitting a question on fraud to the jury; (3) whether Garcia had "unclean hands" and was therefore not entitled to the equitable remedy of specific performance; and (4) whether Mayor is entitled to attorney's fees.

Mayor became the sole owner of the disputed property on Fruge Road in 1985. After becoming sole owner, Mayor never visited the property, but paid the taxes on it to the Harris County Appraisal District (HCAD).

In May 2001, Garcia sought to purchase some property on or around Fruge Road to build a home. On May 30, 2001, after a series of negotiations, and without the assistance of counsel, Garcia and Mayor entered into a land sales contract (Mayor–Garcia contract). The contract contained a property description taken from an HCAD report. Both parties signed the contract and scheduled closing for June 22, 2001. At closing, Garcia tendered final payment on the property. Mayor, however, did not attend.

Garcia sued for specific performance on the contract. A jury found in Garcia's favor, and the trial court granted him spe-

cific performance and attorney's fees. Mayor filed a motion for judgment notwithstanding the verdict, which the trial court denied. This appeal followed.

In her first point of error, Mayor contends she was entitled to a judgment notwithstanding the verdict because the property description in the Mayor–Garcia contract was insufficient as a matter of law.

Texas Rule of Civil Procedure 301 provides that a trial court may render judgment *non obstante veredicto* (JNOV) if a directed verdict would have been proper. *See* TEX.R. CIV. P. 301. A directed verdict is proper when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law. *See Kline v. O'Quinn*, 874 S.W.2d 776, 785 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Under the same rationale, a motion for JNOV should be granted when the evidence is conclusive and one party is entitled to judgment as a matter of law. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990); *Taco Cabana, Inc. v. Exxon Corp.*, 5 S.W.3d 773, 777 (Tex.App.-San Antonio 1999, pet. denied).

The adequacy of a property description in a land sales contract is a question of law within the purview of the statute of frauds. *See Morrow v. Shotwell*, 477 S.W.2d 538, 540 (Tex.1972). We review questions of law *de novo*. *See Gill v. Boyd Distribution Ctr.*, 64 S.W.3d 601, 603 (Tex.App.-Texarkana 2001, pet. denied).

The statute of frauds requires that all conveyances of real property be in writing and signed by the party to be charged. *See* TEX. BUS. & COM.CODE ANN. § 26.01(b)(4) (Vernon 2002). For a land sales contract to meet the requirements of the statute of frauds, it must furnish within itself or by reference to another existing

writing the means or data to identify the particular land with reasonable certainty. *See Jones v. Kelley,* 614 S.W.2d 95, 99 (Tex.1981) (citing *Morrow,* 477 S.W.2d at 539; *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (1945)). A description's validity under the statute of frauds is not affected by the knowledge or intent of the parties. *See Morrow,* 477 S.W.2d at 540. Further, a plat made from extrinsic evidence cannot give validity to the description. *See id.*

Our task is to analyze the property description in the Mayor–Garcia contract to see if it furnishes within itself the means or data to identify the tract with reasonable certainty. This is a two-step process: (1) to look at the data in the contract itself and, if that fails, (2) to determine whether the contract adequately references another document supplying the missing terms.

The Mayor–Garcia contract contained the following property description:

1. **PARTIES:** *Bonnie Bryan Mayor* (Seller) agrees to sell and convey to *Vidal Garcia* (Buyer) and Buyer agrees to buy from Seller the property described below.

 *Fruge RD 77025*

2. **PROPERTY:** Lot _____, Block *TR 14A Allison Richey* Addition, City of *4.9500 AC Gulf Coast Homes Sec P.* County, Texas, known as *(C–3 Red, Vacant) ABST 626 0 Pitts* (Address/Zip Code), or as described on attached exhibit, (the Property).

\* Italicized words indicate the terms filled in by the parties.

According to Garcia, he obtained the "shorthand" description of the property from an HCAD tax report. On its face, the Mayor–Garcia property description is insufficient to identify the property with reasonable certainty. First, the description provides no county or city for the property. Even though the zip code 77025 is listed in the description, presumably providing the data necessary to identify the city and county of the property, at trial, Mayor testified that her property lies within 77047 not the 77025 zip code. Without resorting to parol, there is no way to determine the city or county of the property. While we have found no case explicitly holding that failure to list the county and city in the description is, by itself, fatal, several cases have relied on such failure as strong evidence of an insufficient description. *See, e.g., Pick v. Bartel,* 659 S.W.2d 636, 638 (Tex.1983).[1]

Failure to list a county and state of the property is only one of a series of shortcomings with the Mayor–Garcia property description. In addition to providing no county or state, the description does not show the total acreage to be sold, nor does it provide the data necessary to arrive at this determination. From parol, we know Mayor owned 5.082 total acres on Fruge Road. But nowhere in the description is 5.082 acres specified. Although "4.9500 AC" is stated in the description, it is not clear this refers to acreage. Even if we construe the "4.9500 AC" as a reference to acreage, it is inconsistent with Mayor's total acreage on Fruge Road. In addition, despite Garcia's assertion, the Mayor–Garcia contract does not indicate that Mayor intended to sell her "entire tract" on Fruge Road.

---

1. Other cases similarly holding include: *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (1945); *Osborne v. Moore,* 112 Tex. 361, 247 S.W. 498, 500 (1923); *Coker v. Roberts,* 71 Tex. 597, 9 S.W. 665, 667 (1888); *Jones v. Carver,* 59 Tex. 293, 294 (1883); *Yenda v. Wheeler,* 9 Tex. 408 (1853); *Wiseman v. Zorn,* 309 S.W.2d 253, 260 (Tex.Civ.App.-Houston 1958, no writ); *Cf. Garner v. Redeaux,* 678 S.W.2d 124, 127 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).

On the issue of the quantity of land contracted for, Garcia directs us to *Tex. Pac. Coal & Oil Co. v. Masterson*, 160 Tex. 548, 334 S.W.2d 436 (1960). *Masterson* held that minor differences between contracted acreage and actual acreage in the deed are not fatal to the description. We agree with *Masterson* so long as there is another means to determine the amount of property to be sold. *Masterson* is illustrative on this point. In *Masterson*, the property description contained the following language: "All the unsold portion containing 186.4 acres out of the 640 acres...." *Id.* at 438. But the unsold portion contained more than 186.4 acres. The question facing the court was whether the term "186.4 acres" or "All the unsold portion" controlled. Applying contractual rules of construction, the court gave effect to the phrase "All the unsold portion," concluding that "[t]he call for acreage ... is the least reliable ... in a deed." *Id.* at 439.

But *Masterson* is distinguishable from the present case. As stated above, nothing in the Mayor–Garcia contract, including the property description itself, indicated the parties intended to sell "all" of Mayor's property on Fruge Road. Unlike the description in *Masterson*, the Mayor–Garcia description provided no mechanism to determine the quantity of property to be sold. Without resorting to inferences or parol evidence, we cannot know with reasonable certainty the quantity of property contracted to be sold.

In Texas, the use of parol evidence to aid the determination of a property description is limited. The Texas Supreme Court in *Pick*, 659 S.W.2d at 637 (quoting *Wilson*, 188 S.W.2d at 152), reiterated this limitation:

> The certainty of the contract may be aided by parol only with certain limitations. The essential elements may never be supplied by parol. The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum.

Here, the quantity of property contracted to be sold is left to baseless inferences or to be supplied by parol evidence.

Next, Garcia cites *Garner v. Redeaux*, 678 S.W.2d 124 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e), as the "single most similar case" to the instant case. In *Garner*, the property description in question was written on the back of an earnest money check and was missing both the county and state of the property. The court found that the description was sufficient. In reaching its conclusion, the court inferred the county and state by liberally construing the other terms of the agreement and resorting to parol evidence. *See id.* at 127–128. While recognizing the limitations of parol evidence, the court allowed its use based on a conclusion that the property description on the back of the cashier's check was only a partially integrated document not intended to be a complete embodiment of the parties' agreement. *Id.* at 128. We believe these facts, along with the property description in *Garner*, stand in stark contrast to the instant case. It is instructive to review *Garner*'s property description side by side with the Mayor–Garcia property description. The *Garner* property description contained the following terms:

9-6-78

From Mr. & Mrs. Garner

Lot tract land

tract 66 Block 3

Highland Home Addition

*Id.* at 125.

The Mayor–Garcia property description contained the following terms:

Fruge RD 77025

TR 14A

Allison Richey

4.9500AC

Gulf Coast Homes Sec P

(C–3 Red, Vacant) ABST 626 0 Pitts

Both descriptions are missing the county and state of the properties. This, however, is where their similarities end. The *Garner* description refers to a platted subdivision ("Highland Home Addition"), the entirety of a specific tract ("tract 66"), and a block ("Block 3") therein. Conversely, the Mayor–Garcia description, while referring to a subdivision (Allison Richey), does not provide a tract, block, or lot number consistent with the property Mayor owned. Although the term "TR 14A" may refer to a tract number, such is not entirely clear. Mayor's deed indicates she owned Lot 14. This raises the question: Assuming "TR 14A" does refer to Lot 14, does the "A" mean that only a certain portion of the property was contracted to be sold? Is there also a TR 14B? Any inference becomes even more tenuous when reading the term in context with an HCAD tax report. In that context, "TR 14A" refers to a tax tract used for tax appraisal purposes.

While we can be reasonably certain from the description that Mayor and Garcia intended to sell some property within the "Allison Richey" subdivision, we cannot conclude with exact certainty what proper-

ty, or how much property, within the Allison Richey subdivision Mayor contracted to sell. Without speculation, tenuous inferences, or parol evidence, we cannot know with reasonable certainty the parameters of the contracted-for property.

█ Garcia also asks us to apply the "nucleus of description" theory. This theory, outlined in *Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 248–49 (1955), provides that, if enough information appears in the description so that a party familiar with the locality can identify the property with reasonable certainty, then the property description will be sufficient.

To support the proposition that the Mayor–Garcia property description contained a "nucleus of description," Garcia points to Stewart Title's ease in locating the property with only the information contained in the property description.[2]

The "nucleus of description" theory applied in *Gates*, however, is distinguishable from the present case. In *Gates*, the court of appeals concluded the property description failed because it contained a reference to a nonexisting survey—"Denver Resurvey No. 2." *See id.* at 249. The Texas Supreme Court, however, read all the terms of the *Gates* property description together and determined that "Denver Resurvey No. 2" actually referred to an existing survey—"Denver Resurvey" and the No. 2 referred to a block number within the "Denver Resurvey." The court merely construed existing terms within the description liberally to provide meaning to all the terms of the description. *See id.* In our case, however, no terms within the description provide a "nucleus of description" for either the quantity of acreage to be sold or Mayor's intention to sell all of

**2.** It is not clear from the record whether Stewart Title used other documents to locate the property.

her property, or the county and city of the property. We conclude, therefore, that the Mayor–Garcia contract does not contain a sufficient "nucleus of description."

In addition, Garcia contends the reference to "Fruge Road" in the description was enough to describe the land with reasonable certainty because Mayor only owned one tract of land on Fruge Road. In support of his contention, Garcia points to the Texas Supreme Court's holding in *Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex.1977). In *Kmiec*, the court held, "When the grantor is stated to be the owner of the property to be conveyed and it is proved that the grantor owns only a single tract answering the description, the land is identified with reasonable certainty." *Id.*

But *Kmiec* is also distinguishable from the instant case. *Kmiec* involved an option contract to buy three separate tracts of land 150 acres of tract # 1 and two tracts of 168.25 acres each. The defect in the Kmiec–Reagan option was an uncertainty about the shape of two of the tracts, not the quantity of the property. Reagan, the seller, only owned the three tracts of land specified in the option. *Id.* In addition, the property description within the option contract contained a specific reference to the acreage to be sold—one tract containing 150 acres and two tracts containing 168.25 acres each. *Id.* The court found that, because Reagan only owned these tracts, the tracts were sufficiently described. In the Mayor–Garcia contract, however, there was no quantity, or at minimum an inconsistent quantity of property described. Further, there was no indication that Mayor intended to sell all of her property on Fruge Road. This was not enough to describe the property with reasonable certainty.

In the Mayor–Garcia property description, the essential elements of location and quantity of property to be sold are either left to inference or to be supplied by parol. Thus, in looking at the property description, we conclude that the description itself it is insufficient as a matter of law.

But this does not end our inquiry. The next step is to determine whether the contract sufficiently references another writing supplying the missing terms. If it does, the referenced writing must have been in existence at the time the parties signed the contract. *See Jones*, 614 S.W.2d at 99.

As noted above, Garcia testified he obtained the "shorthand" description of the property from an HCAD report. But the description in the Mayor–Garcia contract provides no reference to the HCAD report. Moreover, even if the contract specifically referenced the HCAD report, the report itself fails to provide a sufficient description.[3] Therefore, under step two of our inquiry, there is no referenced document providing the missing essential terms.

 Even if Garcia and Mayor knew and understood what property was intended to be conveyed, it would not be enough to validate a defective property description. Moreover, as Garcia points out, Stewart Title by a search of abstract records and by using the information in the Mayor–Garcia property description, was able to locate the property and make a plat. But as the Supreme Court aptly stated in *Morrow v. Shotwell*, 477 S.W.2d 538, 540 (Tex.1972), "knowledge and intent of the parties will not give validity to the contract, neither will a plat made from

---

**3.** The HCAD report contains no more information than the Mayor–Garcia property description.

extrinsic evidence. The essential elements of a property description may never be supplied by parol." *Id.* at 541. In the Mayor–Garcia contract, the essential elements of the description are either left to inference or to be supplied by parol. Such a description is palpably insufficient to support a suit either for specific performance or for damages. *See Wilson,* 188 S.W.2d at 154. Mayor's first point of error is sustained.

■■■■■■ Having found the Mayor–Garcia description invalid, we must now determine the proper disposition of this case. Garcia requests that if we reverse, we remand for reformation rather than reverse and render the judgment in favor of Mayor. However, Garcia raises reformation for the first time in a motion for new trial filed with this Court. He never pled reformation at trial, nor did he ask for reformation in his initial appeal. If an argument is not raised in the trial court or briefed on appeal, the argument should not be created by the court of appeals. *Garcia v. Robinson,* 817 S.W.2d 59 (Tex.1991); *see also Guadalupe–Blanco River Auth. v. Pitonyak,* 84 S.W.3d 326, 337 (Tex.App.-Corpus Christi 2002, no pet.) (stating that, although appellees sought specific type of relief based on particular allegations, such claim not raised in trial court pleadings and therefore waived). Garcia, therefore, has waived this remedy.[4]

■■■■ Because Mayor's appeal is reversed and rendered on her first point of error, voiding the Mayor–Garcia contract under the statute of frauds, we need not address the issues of fraud and "unclean hands." The only outstanding issue on appeal, therefore, is whether Mayor is entitled to attorney's fees. Consistent with the Mayor–Garcia contract and a jury's finding on this issue, we conclude Mayor is entitled to attorney's fees.

The Mayor–Garcia contract contained the following provision:

**ATTORNEY'S FEES:** The prevailing party in any legal proceeding brought under or with respect to the transaction described in this contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

The jury found that a reasonable attorney's fee for Mayor is $12,000.00, and for appeal, $5,000.00. Because we render judgment in favor of Mayor, she is entitled to $17,000.00 in attorney's fees.

For the reasons stated, the judgment granting specific performance and attorney's fees in favor of Garcia and against Mayor is reversed and rendered, and judgment is hereby granted in favor of Mayor against Garcia for attorney's fees in the total amount of $17,000.00.

---

4. While we recognize that, in certain circumstances, in the interest of justice we can remand for reformation *sua sponte,* we do not believe this course of action is appropriate here. *See, e.g., Morrow v. Shotwell,* 477 S.W.2d 538, 541–42 (Tex.1972) (finding reformation appropriate remedy in interest of justice). First, the evidence is not clear there was a mutual mistake of the parties. More-over, such an equitable remedy would require Garcia to have "clean hands." At trial, Mayor made at least an allegation of fraud in the inducement. Although the jury never addressed this issue and we do not reach this issue on appeal, from the evidence in the record we cannot say with full confidence that Garcia had "clean hands" and that "justice would require reformation."