

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00080-CV
_____

HOMER FEARS, LOUISE FEARS,
TERRY FEARS AND TERESA FEARS, Appellants

V.

TEXAS BANK, Appellee

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. 2001-295

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Tommy and Wanda Fears borrowed money from the Texas Bank and failed to make the payments in a timely manner. Tommy's parents, Homer and Louise Fears, conveyed fifty acres of their property to the Bank to avoid foreclosure or other legal consequences to Tommy. The Bank gave Homer and Louise written assurance that it would return their property on payment of the note. The note was never satisfied and the Bank was preparing to sell the fifty acres when Homer and Louise, joined by their other son, Terry, and his wife, Teresa, sued the Bank alleging they had been coerced and were under duress when they executed the deed; they requested the trial court to find the conveyance void.

Tommy also conveyed a twenty-acre tract to the Bank which Homer and Louise had previously conveyed to him. Homer and Louise claim their deed to Tommy violated the statute of frauds and was void.[1] Ultimately, the Bank filed summary judgment motions which the trial court granted finding the Bank was the owner of both tracts. The Fearses[2] appeal from a summary judgment taken in favor of the Bank, and Tommy and Wanda Fears.[3]

_____

[1]They sought 1) to have the first deed set aside, 2) declaration that the second deed was invalid, 3) judgment declaring the boundaries of their realty, 4) permanent injunction to prevent the Bank or codefendants, Tommy and Wanda, from conveying the property owned by them, and 5) attorney's fees.

[2]Homer, Louise, Terry, and Teresa Fears will collectively be referred to as the Fearses.

[3]In the original petition, it is alleged that Terry Fears and wife, Teresa Fears, owned the twenty-acre tract. There is no support for that contention in the record. In the brief filed in this Court, the Fearses argue that "legal and equitable title to the property is still in Homer and Louise

In a pleading which the Bank entitles as a cross-action, but which appears to be a classic counterclaim,[4] the Bank claimed that the Fearses' lawsuit had clouded its title to the property and requested a declaratory judgment establishing its title to the fifty- and twenty-acre tracts.

The Bank filed its initial motion for summary judgment in June 2005. The motion is a traditional one alleging there was no genuine issue of material fact. It contains a lengthy exposition of the course of events leading up to the foreclosure and is supported by an affidavit by the president of the Bank. The Fearses filed a response August 17, 2005.

In February 2006, the Bank then filed a supplemental motion for summary judgment (a no-evidence motion against the claims of duress) and the Fearses filed a supplemental response February 6, 2006. A hearing on the motion was conducted February 23; the trial court advised the attorneys by letter dated February 27 that the Bank's motions for summary judgment were granted.

On February 28, the Fearses filed a supplemental complaint which, on March 2, the Bank filed a motion to strike.[5] The trial court granted summary judgment by order signed April 6, 2006.

Fears." It is unclear why Terry and Teresa are included as appellants.

[4]A counterclaim is asserted against the opposing party. A cross-claim is a pleading asserted against a coparty. TEX. R. CIV. P. 97(a), (b), (e).

[5]Summary judgment may be granted on later-pleaded causes of action if the grounds actually asserted show that the plaintiff could not recover on the later-pleaded cause of action. *Ortiz v. Collins*, 203 S.W.3d 414, 423 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Espeche v. Ritzell*, 123 S.W.3d 657, 664 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("If a motion for summary judgment is sufficiently broad to encompass later-filed claims, the movant need not amend his motion."). In this case, the late-filed pleadings are essentially expansions of the original claims. New causes of action were alleged that might not fall within the scope of the previously-filed

That summary judgment was not then final, as it did not dispose of the cross-action. The cross-action was disposed of by a later judgment signed February 8, 2007, and this appeal followed in due course.

## I.    Contentions of the Fearses

On appeal, the Fearses complain that the summary judgment regarding the property was erroneous. First, the Fearses argue there was some evidence this was a sham transaction which should be set aside; that the fifty-acre tract was a homestead and it could not be foreclosed on for a non-purchase-money lien. The Fearses argue their deed to the Bank was nothing more than an artful way to avoid the homestead provisions of the Texas Constitution—and they only agreed to this procedure because the Bank threatened to have their son jailed should they refuse.

Second, the Fearses assert that there was some evidence the deed was obtained by fraud and extortion by the Bank and that there was some evidence no consideration was received for the transfer.

In their third point, the Fearses argue the trial court erred by refusing to grant their motion for summary judgment asking the court to set aside the 1995 deed to Tommy because it did not meet the requirements of the statute of frauds—because it did not adequately identify the property being transferred.

motions for summary judgment.

4

In a fourth point, the Fearses argue that the court erred by granting summary judgment on attorney's fees because they contested the amount in their response to the summary judgment motion and because the summary judgment against them was improperly rendered.

## II.     The Bank's Response

The Bank addresses the Fearses' first argument as complaining the court erred because there was an issue about whether the property was a homestead, and submits that the issue was not preserved because that matter was not alleged until the Fearses' first supplemental complaint, filed after the summary judgment hearing.

The Bank contends that "fraud and extortion," as now argued by the Fearses, was not before the trial court—the only tort claims were duress and coercion, which were before the court and properly subject to the Bank's no-evidence summary judgment motion.  It also argues there was no evidence to controvert its allegations that credit was given to the notes of Tommy and Wanda as consideration for the transfer of the property.

The Bank argues the deed of the twenty-acre tract sufficiently describes the property to meet the requirements of the statute of frauds.

Finally, the Bank argues there is no summary judgment evidence to controvert its claims for attorney's fees—only legal conclusions that those fees were excessive.

### III.   Discussion

#### A.   Standard of Review

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223.

#### B.   Homestead

The Bank correctly states that the homestead defense now advocated by the Fearses was not presented to the trial court by pleading or by summary judgment response. No pleading raising the homestead issue was filed until after the trial court had conducted a hearing on the motions for summary judgment and advised the attorneys in writing of its decision. There is no showing that the trial court was ever presented with or considered this argument. Having not timely presented the issue to the trial court, it cannot now be considered.

#### C.   Duress, Coercion, and Fraud

The next series of complaints is generally directed at the portion of the summary judgment in which the court found the Bank conclusively proved it had not engaged in a series of misdeeds

in order to obtain the rights to the Fearses' property—or, alternatively, that the Fearses had provided no evidence to support those allegations.

In the Fearses' original response to the first motion for summary judgment, they claimed that an issue of fact existed on its document-related claims, and on their claims of lack of consideration, fraud, duress, illegal coercion, and extortion—all of which were based on the appendices attached to their response. The appendices consist of the depositions of Homer (forty-five pages of content), Louise (eight pages of content), and Tommy (thirty-five pages of content).

The Bank's sole defensive argument in this context is that the response is structurally inadequate because the Fearses' counsel did not adequately direct the trial court's attention to any particular portion of these depositions as support.

Homer's deposition contains allegations that the Bank threatened to "send my son to prison," and to avoid that, Homer and his wife executed the fifty-acre deed to the Bank. Homer further stated he and his wife received nothing for granting the deed to the Bank.

Louise testified she had been upset about the possibility of conveying the fifty acres to the Bank, but Tommy stated the Bank was to take everything he had and send him to prison and that he had tried to shoot himself, but the gun misfired. She stated they only agreed to grant the Bank the deed because the Bank officer told her that Tommy could go to prison.

Tommy testified about the history of his notes with the Bank—and his subsequent bankruptcy, and about a number of other matters, including the death of his son at about the time of

the Bank's activities. Tommy also stated there was a trailer confiscated by the Bank that was not part of the collateral for any note—and which in fact did not belong to him.

The Bank argues that none of this can be considered as evidence in response to its no-evidence motion for summary judgment because it was filed in response to the Bank's *first* motion for summary judgment, rather than the *second* (no-evidence) motion. The Bank directs our attention to *Saenz v. Southern Union Gas Co.*, 999 S.W.2d 490 (Tex. App.—El Paso 1999, pet. denied), as support for its position.

In *Saenz*, the plaintiff filed a summary judgment response to a traditional motion in 1995. On November 25, 1997, the defendant filed a no-evidence motion, which was heard in December. Although Saenz filed a response, it was untimely, and the El Paso court held that it would not consider the 1995 response as providing evidence.[6] The El Paso court stated that, even though a nonmovant is not required to "needlessly duplicate evidence already found in the court's file," he or she is required to make sure the evidence is properly before the trial court for its consideration in ruling on the motion for summary judgment. *Id*. at 494.

As in *Saenz*, here, the Fearses did not request the trial court take judicial notice of the evidence presented in the answer to the previous motion for summary judgment, nor did they incorporate that response or even refer to it. *See Kalyanaram v. Burck*, 225 S.W.3d 291, 301 (Tex.

---

[6]Similarly, *see Lee v. Palacios*, No. 14-06-00428-CV, 2007 Tex. App. LEXIS 8193 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, no pet. h.) (mem. op.) (ten months between first and second motions, and first motion had been denied).

8

App.—El Paso 2006, no pet.) (affidavit dated July 28, 2004, not attached to or referenced in 2005 response to motion for summary judgment, thus not considered by the court); *Steinkamp v. Caremark*, 3 S.W.3d 191, 195 (Tex. App.—El Paso 1999, pet. denied) (incorporation by reference to previous answer found to properly present such evidence to the trial court); *McMillan v. Hillman Int'l Brands, Ltd.*, No. 14-03-01392-CV, 2004 Tex. App. LEXIS 6738 (Tex. App.—Houston [14th Dist.] July 27, 2004, pet. denied) (mem. op.).

The result is this: Even if we concluded that we should review the entirety of the depositions—which is questionable, *see Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989) (holding general references to voluminous record do not direct trial courts and parties to evidence on which movant relies); *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ)—they were not filed in response to the no-evidence motion and were not otherwise presented, by incorporation or reference, to the trial court. Further, over eight months elapsed between the Bank's filing of its traditional motion and its no-evidence motion. The summary judgment on those issues was thus properly rendered.

### D. Failure or Lack of Consideration

As part of their second point of error, the Fearses allege that, when they conveyed the fifty acres to the Bank, they received no consideration and it is therefore voidable. However, it is undisputed that, at the time of the conveyance, the Bank credited the note of Tommy and Wanda in the amount of $36,000.00. A valuable and legal consideration may consist either of a benefit to the

9

promissor or a loss or detriment to the promissee. *Minton v. Riverside State Bank*, 399 S.W.2d 196, 198 (Tex. Civ. App.—Fort Worth 1966, no writ). We find the evidence shows conclusively that consideration was given for the conveyance.

### E.     Statute of Frauds—Twenty-Acre Tract

The Fearses contend the judgment was improper because the twenty-acre deed conveyed from Homer and Louise to Tommy and Wanda did not comply with the statute of frauds and was therefore void. Consequently, the twenty-acre deed Tommy executed in the Bank's favor conveyed nothing. This complaint is based on the Fearses' position that the description of the property is insufficient to allow it to be located from the instrument of conveyance.

The Bank responds by complaining that the Fearses' expert testimony was inadequate. That misapprehends the nature of this argument. The contention is that the document itself is legally invalid. If so, that is shown on the face of the document—as a matter of law. That particular question is not an issue susceptible to evidentiary proof.

However, there is some purpose for having evidence from a surveyor—it provides some indication the property could be identified on the ground—which is one of the matters that is important in such a review.

The statute of frauds requires that all conveyances of real property be in writing and signed by the party to be charged. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4) (Vernon Supp. 2007). For a land sales contract to meet the requirements of the statute of frauds, it must furnish within itself

10

or by reference to another existing writing the means or data to identify the particular land with reasonable certainty. *See Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983); *Jones v. Kelley*, 614 S.W.2d 95, 99 (Tex. 1981) (citing *Morrow v. Shortwell*, 477 S.W.2d 538, 539 (Tex. 1972); *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945)). The purpose of a description in a written conveyance is not to identify the land, but to afford a means of identification. *Jones*, 614 S.W.2d at 99–100. A description's validity under the statute of frauds is not affected by the knowledge or intent of the parties. *See Morrow*, 477 S.W.2d at 540. Further, a plat made from extrinsic evidence cannot give validity to the description in the sales contract. *See id.*; *Mayor v. Garcia*, 104 S.W.3d 274, 276–77 (Tex. App.—Texarkana 2003, pet. dism'd w.o.j.).

The legal description in the conveyance must not only furnish enough information to locate the general area, as in identifying it by tract survey and county, it need contain information regarding the size, shape, and boundaries. *See Morrow*, 477 S.W.2d at 539; *Matney v. Odom*, 147 Tex. 26, 210 S.W.2d 980, 982 (1948).[7] If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds. *Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 248–49 (1955). Even when "[t]he record leaves little doubt that the parties knew and understood what property was intended to be conveyed, . . . the knowledge and intent of the parties will not give validity to the contract; and neither will a plat made

---

[7]*Cf. Stewart v. Collatt*, 154 S.W.2d 891, 892 (Tex. Civ. App.—Dallas 1941, no writ) (finding description adequate where general location specified, along with starting point and metes and bounds description therefrom).

from extrinsic evidence." *Morrow*, 477 S.W.2d at 540 (citations omitted); *Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

If a conveyance of an interest in real property does not sufficiently describe the land to be conveyed, it is void and unenforceable under the statute of frauds. *See Republic Nat'l Bank of Dallas v. Stetson*, 390 S.W.2d 257, 261 (Tex. 1965). Such a contract, deed, or conveyance will not support an action for specific performance or a suit for damages for a breach of contract. *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945); *Reiland*, 213 S.W.3d at 437.

The specific twenty-acre deed complained of is attached as an exhibit to the Bank's first motion for summary judgment. It purports to transfer property from Homer and Louise to Tommy and Wanda, and is dated December 11, 1995. There is no metes and bounds description. The description reads as follows:

> Being 20 acres off of the West end of the following described one-hundred acre tract, the boundaries of such 20 acres to be located so as not to include any of the waters of Shawnee Creek, said one-hundred acre tract described as follows:
> Being a tract of 100 acres, situated in the Daniel Reel Survey, Rusk County, Texas and being the same land described and conveyed in Deed from J. H. Turner to J. L. Fears, dated August 16, 1901, and recorded in Volume 47, Page 620, Deed Records of Rusk County, Texas.

There is adequate description of the location of the 100 acres—by reference to the official deed records of the county. The question is whether the description of the twenty-acre portion of that 100-acre tract is legally sufficient.

The Bank attached a surveyor's plat made as the result of a survey conducted by a Texas registered public surveyor to its first motion for summary judgment; this plat purports to describe a seventy-acre tract comprised of the fifty-acre tract and the twenty-acre tract. This plat reflects the twenty acres' south boundary to be common with the fifty acres' north boundary and for the two tracts to possess a common west corner. There is, however, no evidence to explain how the surveyor established the boundary lines of the twenty-acre tract shown on his plat. The Bank simply argues the description is sufficient because a surveyor located the property and prepared the "plats and metes and bounds descriptions as referenced."

Texas courts use a fairly strict application of the statute of frauds and conveyances, yet, the courts have also noted that the words of description are given a liberal construction in order that a conveyance may be upheld. Although parol evidence may be admitted to explain the descriptive words and to identify the land where the instrument contains a "nucleus" of description, *Gates*, 280 S.W.2d 247; *Smith v. Sorelle*, 126 Tex. 353, 87 S.W.2d 703 (1935); *Miller v. Hodges*, 260 S.W. 168 (Tex. Comm'n App. 1924), none appears in this case. We also note that even language stating the land is "my property," "my land," or "owned by me" "is sufficient when it is shown by extrinsic evidence that the party to be charged and who has signed the contract or memorandum owns a tract and only one tract of land answering the description in the memorandum." *Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex. 1977) (quoting *Pickett v. Bishop*, 148 Tex. 207, 223 S.W.2d 222, 223 (1949)).

13

Nevertheless, to be sufficient, the deed must furnish within itself, or by reference to some other writing, the means or data by which the land to be conveyed may be identified with reasonable certainty. *Id.* at 569; *Morrow*, 477 S.W.2d at 539; *Littlejohn v. Kariel*, 568 S.W.2d 452, 454 (Tex. Civ. App.—Waco 1978, no writ) (finding description in deed insufficient when it referred to "50 acres . . . off the South end" of a specified tract).

In this case, to simply describe property as "off of the west end," even when the main property is adequately identified, is not sufficient, standing alone, to determine where, or at what angle, or series of angles, the property was divided from the main part. *See Matney*, 210 S.W.2d at 982 ("If the shapes respectively of the two pieces of land had been stated and course and distances of boundary lines called, and the four acres had been designated 'off of' instead of 'out of' the larger piece, a less difficult question would be presented. However, under the established law of this state, the descriptive language used in this lease is vitally lacking in definiteness."). Even though the surveyor set boundaries, there is no evidence he was able to locate the twenty-acre tract in question with reasonable certainty based on the data contained in the deed or any other writing. The survey appears to place the twenty-acre tract in the northwest corner of the 100-acre tract. We find nothing in the description of the property that would provide data to establish that the property was located in the northwest corner. The difficulty with the description is that it refers only to "[b]eing 20 acres off of the West end of the following described one-hundred acre tract." In order to establish the precise location of the twenty acres, one must engage in inference and conjecture to determine its

14

boundaries.  This description is somewhat like that in *Williams v. Ellison*, 493 S.W.2d 734, 735 (Tex. 1973), in which the property was described as:  "a portion of the boundary line of the 10 acre tract so purchased shall be contiguous to a portion of the boundary line of the 10 acres described above in this contract . . . ."  The Texas Supreme Court held the description did no more than provide a site of origin for the option tract.  *Id.* at 736.  Likewise, here, the description merely provided that the twenty-acre tract was "off of" the west end of the 100-acre tract.  It did not provide any distance that such tract was to be contiguous with the west end.  Theoretically, a twenty-acre tract could have been "off of the west end" of the 100-acre tract even if it had a mutual boundary for a very short distance.  Neither did the description provide any length, breadth, or shape of the referenced twenty-acre tract.  The writing did not supply sufficient information within itself or by reference to another document to locate the twenty-acre tract.  The only other reference was to the original 100-acre tract, from which it was supposed to be carved, and that is not sufficient to assist in identifying and locating this twenty-acre tract with reasonable certainty.  Thus, the deed fails to satisfy the statute of frauds and is void and unenforceable.

### F.      Attorney's Fees

The trial court awarded the Bank attorney's fees on its "cross-action" for declaratory judgment against the Fearses and established the Bank's ownership of both the fifty-acre tract and the twenty-acre tract.  The declaratory judgments statute allows the court to award reasonable and necessary attorney's fees "as are equitable and just."  TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon

15

1997).  One of the considerations in determining a reasonable attorney's fee is "the amount involved

and the results obtained." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.

1997).  Further, under the Declaratory Judgments Act, the attorney's fee is also subject to the court's

determination that the fee is equitable and just.  When the court awarded the attorney's fee, the Bank

had prevailed in all respects; we have determined the judgment is in error regarding twenty of the

seventy acres involved.   Therefore, we cannot be reasonably certain the trial court was not

significantly influenced in awarding attorney's fees by an erroneous conclusion that the Bank should

recover the entire seventy acres.  Consequently, we reverse the award of attorney's fees and remand

to the trial court for further consideration in light of our opinion.  *See Barker v. Eckman*, 213 S.W.3d

306, 314 (Tex. 2006); *Avco Corp. v. Interstate Sw., Ltd.*, No. 14-05-00860-CV, 2007 Tex. App.

LEXIS 8838, at *97 (Tex. App.—Houston [14th Dist.] Nov. 1, 2007, no pet. h.).[8]

---

[8]No issue is presented to this Court as to whether the Bank's counterclaim asserts a cause of action independent of the Fearses' suit.  *See BHP Petroleum Co. v. Millard*, 800 S.W.2d 838 (Tex. 1990).

We affirm the judgment as to the Fearses' claims concerning the fifty-acre tract. Having found the conveyance of the twenty-acre tract void and unenforceable, we reverse and render judgment on that issue. The attorney's fee issue is reversed and remanded for further proceedings consistent with this opinion.


Jack Carter
Justice


Date Submitted:      December 10, 2007
Date Decided:        February 6, 2008