NO. 07-10-0146-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 27, 2011
_____

BOBBY G. BARHAM,

Appellant

v.

PATRICIA MCGRAW,

Appellee
_____

FROM THE 13TH DISTRICT COURT OF NAVARRO COUNTY;

NO. 08-17,231-CV; HONORABLE JAMES E. LAGOMARSINO, PRESIDING
_____

***Opinion***
_____


Before QUINN, C.J., and CAMPBELL  and PIRTLE, JJ.

*Blood may be thicker than water, but money beats everything.*[1]

*He that is greedy of gain troubleth his own house.*[2]

Before us lies a dispute between brother and sister regarding the division of their

deceased father's real estate.  When their father died, the realty in question became the

corpus of a trust to benefit his widow, Margie, the trust's trustee.  Upon her death, the

---

[1]Lizzy.

[2]*Proverbs* 15:27.

property remaining in it was to be distributed to the trustor's "descendants." Bobby Barham and Patricia Ann McGraw, his children, were two such descendants.

Being trustee, Margie had the express authority to exchange, sell, lease, and partition on such terms and at such times as she "deem[ed] proper" the trust's corpus, and she exercised that authority by conveying various tracts of land to both children. Thereafter, Bobby concluded that the conveyances were unfair and resulted in Patricia receiving more than that to which she was entitled. This conclusion was founded upon a writing signed in February of 2005, by Margie, Bobby and Patricia. Therein, the parties allegedly "partitioned" the lands the two descendants were to receive from the trust, according to Bobby. And, the actual conveyances from Margie failed to abide by that supposed agreement. Because Bobby had "been praying for guidance" and felt "very comfortable with proposals that [were] made" and was "so sure that the way [his sister] convinced Mother to make the conveyances was so unfair to [him] and [his] family that [he could not] let the matter go unchallenged," he sued his sister and sought the specific performance of the so-called partition agreement.

Patricia moved for and received summary judgment denying Bobby specific performance and sanctioning him for initiating frivolous litigation. Bobby then appealed the decision and contends that the trial court erred in granting his sister judgment and sanctions. We affirm in part and reverse in part.

*Summary Judgment*

Various grounds were alleged by Patricia in her motion for summary judgment. And, in granting it, the trial court did not specify upon which one it relied. Thus, the judgment may be affirmed on any ground that is meritorious. *Harwell v. State Farm*

2

*Mut. Auto Ins. Co.,* 896 S.W.2d 170, 173 (Tex. 1995). And, the ground we focus on involves the statute of frauds and the lack of any adequate description of the property within the February 2005 writing.

To be entitled to specific performance, an agreement must be valid and enforceable. *Abraham Inv. Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518, 527 (Tex. App.– Amarillo 1998, pet. denied). But, a deed or conveyance that does not sufficiently describe the land to be conveyed is not of such ilk. *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (1945) (stating that it is well settled that before a court will decree the specific performance of a contract for the sale of land, the written agreement or memorandum required by the statute of frauds must contain the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence to show the intention of the parties and in so far as the description of the property is concerned, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty); *Nguyen v. Yovan*, 317 S.W.3d 261, 267 (Tex. App.–Houston [1st Dist.] 2009, pet. filed) (also discussing the requirement to identify the land with reasonable certainty and holding that if it is not, then the conveyance is void). This rule has been applied when a party sought specific performance of a settlement agreement requiring the transfer of land, *see e.g. Martin v. Thalman*, 568 S.W.2d 460, 462 (Tex. Civ. App.–Beaumont 1978, no writ), and that appears to be the reason why Bobby, Patricia and their mother executed the letter agreement at issue. Margie allegedly sought "peace of mind" regarding which child was to get what from the trust.

Per the letter agreement which Bobby drafted, Patricia was afforded two options. Each referred to various parcels of land he deigned to combine under different methodologies. The first was:

**Option 1 – Based on value**

You receive:

1. Massengale Place – less Tracy's house and land
2. Sheppard Place
3. Home Place
4. Page Place
5. That portion of the green place highlighted in the enclosed map

The next was:

**Option 2 – Based on equal acres**

You receive:

1. Massengale Place – less Tracy's house and land
2. Sheppard Place
3. Rutledge Place
4. Lumley Place
5. Enough of the meadow to be exactly equal acres

Attached to the letter was what purported to be an aerial view of the property. Yet, neither it nor the letter contained any legal description of the realty involved. Instead, Bobby simply mentioned the parcels by the aforementioned names.

As previously discussed, when the essential elements of a property's description are left to inference or to development by parol, the description is insufficient to support a suit for specific performance irrespective of whether the parties themselves understood what land formed the subject matter of the conveyance. *Mayor v. Garcia,* 104 S.W.3d 274, 280-81 (Tex. App.–Texarkana 2003, writ dism'd w.o.j.). So too did the *Mayor* court note that the elements of an adequate description include reference to the

location and quantity of the property involved. *Id.* at 280. The February letter at bar mentions nothing about the quantum or acreage of land involved in the conveyance. Nor does it refer to the metes, bounds, block, survey, city, county, or state in which the land is located or even a separate writing containing that information. Instead, the description consists of nothing more than names someone apparently attached to the different parcels at one time or another. Given these undisputed circumstances, we cannot say that the letter agreement satisfied the statute of frauds, and the trial court could have so held as a matter of law when granting Patricia summary judgment.

Bobby, however, argues that there need not be an adequate description in the letter since the document merely evinced a partition of lands. Authority does exist indicating that a partition is not subject to the statute of frauds. *Houston Oil Co. v. Kirkindall,* 136 Tex. 103, 145 S.W.2d 1074, 1077 (1941). Nonetheless, Bobby's argument rests upon a false premise. The document at issue cannot be construed as a partition. The latter serves to divide property owned by co-tenants and concerns possession, not title. *Id.*; *see also Dierschke v. Central Nat'l Branch of First Nat'l Bank of Lubbock,* 876 S.W.2d 377, 380 (Tex. App.–Austin 1994, no pet.) (stating that an owner of a non-possessory interest cannot compel partition). The record is clear that neither Patricia nor Bobby had a right to possession of any realty held in the trust. Right to possession resided in their mother, the trustee. *See Manchaca v. Martinez,* 136 Tex. 138, 148 S.W.2d 391 (Tex. 1941). We have been cited to nothing of record indicating that either Patricia or Bobby held legal title to the realty when they signed the February 2005 letter. Nor did or does anyone dispute that legal title to the property lay with the trustee of their father's testamentary trust at the time. Indeed, if this was not so and if

5

the two children owned the land, there would have been no need for their mother to seek "peace of mind" by transferring it to them. Consequently, the document Bobby drafted and tendered to his remaining family members was not a partition irrespective of his unilateral belief.

In sum, the February 2005 letter agreement violates the statute of frauds and, therefore is void. We overrule issue one.

*Sanctions*

Bobby also challenges the sanctions levied by the trial court under section 9.012 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §9.012(c)(3) (Vernon 2002) (stating that if the court determines that a pleading has been signed in violation of any standard prescribed in §9.011, the court shall impose an appropriate sanction on the signatory, a represented party, or both). He alleges, among other things, that the requirements of the statute were not followed. We agree.

Patricia filed her motion for summary judgment on May 8, 2009, and the trial court set it for submission on June 15, 2009. Through the motion, she not only sought judgment on the claims asserted by her brother, but also upon her counterclaim for sanctions. On July, 3, 2009, the trial court notified the parties by letter that Bobby had not filed a response to the motion, that it "trusts . . . [he] was served with the . . . motion" and that the motion was granted. Then, it informed the litigants that it would "sign the judgment when presented." No specific mention was made about the frivolousness of the pleadings, however. In response to the trial court's letter, Bobby's attorney notified the court that though he received the motion, the fiat "was left blank." Thus, "we never received any further notice of a hearing date", *i.e.* the date upon which

6

the trial court would submit the motion for determination. Opposing counsel admitted to the accuracy of his opponent's representations, and the trial court rescheduled the submission date for August 28, 2009. On December 30, 2009, the trial court issued its letter informing the parties that it had decided once again to grant the motion and would sign the order when presented with it. Again, nothing expressly was said about Bobby's pleadings being groundless. However, in the judgment signed on January 21, 2010, the trial court concluded that the suit was groundless as "defined in §9.001(3)(B) of the Texas Civil Practice and Remedies Code" and assessed a $16,669.87 sanction per §9.012(c)(3) of that same Code.

As can be seen from the aforementioned factual recitation, the trial court assessed sanctions within ninety days of concluding, either on December 30, 2009, or January 21, 2010, that Bobby filed groundless claims. This is problematic because it was obligated to delay the assessment of sanctions for at least 90 days from the date it found the pleadings baseless. *See* TEX. CIV. PRAC. & REM. CODE ANN. §9.012(c) (Vernon 2002) (stating that sanctions shall not be imposed "earlier than 90 days after the date of the determination, at the trial or hearing or at a separate hearing following reasonable notice to the offending party"); *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668 (Tex. App.–Dallas 2003, no pet.) (first noting that the trial court determined that sanctions against Elkins were appropriate and, in the same order on the same day, imposed a sanction and then concluding that because this violated §9.012(c)'s requirement of a ninety-day interval between the date of determination of a violation and the imposition of a sanction, chapter 9 did not support the award). Because sanctions

7

were levied here before expiration of the ninety-day period, we sustain the second issue.

We reverse that portion of the trial court's summary judgment levying sanctions against Bobby G. Barham and affirm the remainder of the judgment.


Brian Quinn
Chief Justice