**Randall Clayton MAY, Union Energy, Inc., and Lane McNamara, Appellants**

v.

**William "Bill" BUCK, Petrox Energy Corporation, Harco Texas, LLC d/b/a/ Harco Tex, LLC, Five Star Exploration, Inc., Alan K. Jasper, M. Dewayne Varnadore, James Fischer, A.P. Merritt, Jr., Midway Exploration, LLC, Haynesville E & P, LLC, and Scott**

Heape, Appellees.[1]

No. 05–09–01501–CV.

Court of Appeals of Texas,
Dallas.

July 11, 2012.

---

1.  The list of appellees varies in the captions of the parties' briefs, some including as many as fourteen appellees. The trial court's judgment names eleven appellees, those listed in our caption. Eight of the eleven appellees, Five Star Exploration, Inc., Alan K. Jasper, M. Dewayne Varnadore, James Fischer, A.P. Merritt, Jr., Midway Exploration, LLC, Haynesville E & P, LLC, and Scott Heape are represented by the same counsel on appeal and together filed one brief. Appellee Harco. Texas, LLC d/b/a Harco Tex, LLC, represented by different counsel, also filed a brief. Appellees William "Bill" Buck and Petrox Energy Corporation did not file a brief. Other individuals or entities listed as appellees in the captions of the parties' briefs, but not represented on appeal or included in the lists of parties and counsel in the briefs, are not included here.

Jeffrey C. King, Winstead, PC, Ft. Worth, TX, Christopher A. Brown, Winstead, PC, Dallas, TX, for Appellants.

Gary E. Smith, Graham, Bright & Smith, P.C., Kenneth W. Good, David James Bush, Kent, Good, Anderson & Bush, P.C., Tyler, TX, Scott Allen Shanes, Strasburger & Price, Frisco, TX, Jackson H. Ables, III, Danies, Coker, Horton & Bell P.A., Jackson, MS, Todd Andrew Murray, Carrington, Coleman, Sloman & Blumenthal L.L.P., Dallas, TX, for Appellees.

**572**

Before Justices MOSELEY, FILLMORE, and MYERS.

## OPINION

Opinion By Justice MOSELEY.

In a single-issue bench trial, the trial court determined that the property description contained in a letter agreement between appellant Randall Clayton May and appellee William "Bill" Buck did not satisfy the requirements of the statute of frauds. We affirm the trial court's judgment.

### BACKGROUND

On January 20, 2005, May, Buck, and appellee Petrox Energy Corporation (Petrox) entered into a letter agreement regarding the acquisition of mineral rights in Leon County, Texas. The letter agreement recited that May and Buck desired "to enter into an agreement to acquire mineral rights on acreage in Leon County, Texas from Norman Powell and Mary Bormann (Formerly Mary Powell)." The agreement provided that May would provide the capital to lease the acreage, and Buck would lease the acreage to acquire the mineral rights.

The following are the relevant terms and conditions from the letter agreement:

RM [May] will provide the capital to lease the acreage.

BB [Buck] will lease the acreage.

BB will assign to RM or any entity designated by RM all the mineral rights and a 100 acre spacing centered around the David Morris Gas Unit # 1 in Leon County, Texas.

BB will retain the mineral rights to the South of the unit.

RM will retain the rights to the North of the center of the unit, if any. The boundary will be from an East–West line on the David Morris Gas Unit and then all mineral acreage covered by the lease to the North, if any.

The acreage referred to within this agreement is better described in the Exhibit A attached to this agreement and made a part of this agreement.

Exhibit A attached to the agreement describes "563.465 acres, more or less as described in the following four tracts," and includes specific references to the deed records of Leon County for each tract.

Pursuant to the letter agreement, May provided the capital and Buck entered into leases with Mary M. Powell Borman and Norman Powell. Later, when Buck did not assign the mineral rights to May, May filed suit against Buck and Petrox. May also asserted claims against the other appellees, including claims for tortious interference with May's contract with Buck. Appellants Union Energy, Inc. and Lane McNamara intervened in the suit.

The parties agreed to a bench trial on the limited issue of appellees' affirmative defense that the statute of frauds barred May's claims. As appellees' counsel argued at the trial, "the problem is where's the hundred acres [?]" described in the letter agreement. Both appellees and appellants offered expert testimony. Appellees' expert, Daniel Elbert, testified that he could not determine, from the letter agreement or from any other document, a metes and bounds description of only one tract to be conveyed under the letter agreement, but rather that several different configurations were reasonable. Appellant's expert, Alan Morgan, testified he could determine with reasonable certainty that the hundred acres conveyed in the letter agreement was in the shape of a rectangular "halo," (also referred to at trial as a "donut," or "picture frame") immediately outside the boundary of the David Morris Gas Unit. Over appellants' objec-

tions, appellees also offered the deposition testimony of appellant May that the well bore was the center of the hundred acres, and the spacing could be a circle, a square, or oblong in shape.

After the trial, the court entered findings of fact and conclusions of law, and entered judgment for appellees.[2] Appellants assert the trial court erred in concluding the letter agreement did not satisfy the statute of frauds.

### APPLICABLE STANDARDS OF REVIEW

The trial court concluded the description of the property in the letter agreement did not satisfy the statute of frauds. The parties agree we review this conclusion de novo. *See Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194 (Tex.App.-Tyler 2004, pet. denied) (citing *Haines v. McLean*, 154 Tex. 272, 280, 276 S.W.2d 777, 781–82 (1955), and *In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994)).

■■■■ Appellants also challenge several of the trial court's findings of fact and conclusions of law. Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). When a complete reporter's record is filed, the trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *Catalina*, 881 S.W.2d at 297. We do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *FDIC v. F & A Equip. Leasing*, 854 S.W.2d 681, 684 (Tex. App.-Dallas 1993, no writ). Unchallenged findings of fact are binding on the parties

and the appellate court. *Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 658 (Tex. App.-Dallas 1993, writ denied).

In addressing a legal sufficiency challenge, we view the evidence in a light most favorable to the finding, consider only the evidence and inferences that support the finding, and disregard all evidence and inferences to the contrary. *Catalina*, 881 S.W.2d at 297. We uphold the finding if more than a scintilla of evidence exists to support it. *Id.* In reviewing a factual sufficiency challenge, we examine all of the evidence and set aside a finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

We do not review a trial court's conclusions of law for factual sufficiency. *See Dallas Morning News Co. v. Board of Trustees*, 861 S.W.2d 532, 536 (Tex.App.-Dallas 1993, writ denied). Rather, we evaluate them independently, determining whether the trial court correctly drew the legal conclusions from the facts. *Id.* However, incorrect conclusions of law will not require a reversal if the controlling findings of fact will support the judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ).

■■■ Appellants also challenge the trial court's admission of certain evidence. The decision whether to admit or exclude evidence is committed to the sound discretion of the trial court. *City of Brownsville v.*

**2.** The trial court severed May's claim for rescission of the letter agreement against Buck and Petrox.

*Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A trial court's evidentiary ruling must be upheld if there is a legitimate basis for it. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). Even if the exclusion or admission of evidence is found to be an abuse of discretion, it does not warrant reversal unless the error probably caused the rendition of an improper judgment. *See id.*

## ANALYSIS

### A. Requirements of the statute of frauds

The parties agree that the letter agreement, as an instrument conveying an interest in real property, is subject to the statute of frauds. TEX. BUS. & COM.CODE ANN. § 26.01(b)(4) (West 2009). The statute of frauds requires that all contracts for the sale of real estate be in writing and signed by the person to be charged. *Id.; see also* TEX. PROP.CODE ANN. § 5.021 (West 2004) (conveyance of land must be in writing and "subscribed and delivered by the conveyor").

■ In addition, the statute of frauds requires that the writing furnish the data to identify the property with reasonable certainty. *Texas Builders v. Keller,* 928 S.W.2d 479, 481 (Tex.1996) (citing *Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex. 1972)). The supreme court stated the applicable test in *Morrow:*

> The rule by which to test the sufficiency of the description is so well settled at this point in our judicial history, and by such a long series of decisions by this court, as almost to compel repetition by rote: To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty. [Citations omitted.]

*Id.*

■ While the sufficiency of the writing under the statute of frauds is a question of law, we have also explained, "[i]f enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds." *Apex Fin. Corp. v. Garza,* 155 S.W.3d 230, 237 (Tex.App.-Dallas 2004, pet. denied) (citing *Gates v. Asher,* 154 Tex. 538, 280 S.W.2d 247, 248–49 (1955)). To determine the sufficiency of the description, then, the trial court may consider evidence to determine whether "a person familiar with the area can locate the premises with reasonable certainty." *Id.; see also Fears v. Texas Bank,* 247 S.W.3d 729, 735 (Tex.App.-Texarkana 2008, pet. denied) (while question of legal validity of deed is one of law "not susceptible to evidentiary proof," there is "some purpose" in considering evidence from a surveyor to provide "some indication the property could be identified on the ground," which is "one of the matters that is important in such a review"). Parol evidence may be used to explain or clarify the written agreement, but not to supply the essential terms. *Tex. Builders,* 928 S.W.2d at 481. A description's validity under the statute is not affected by the knowledge or intent of the parties. *See Morrow,* 477 S.W.2d at 540.

■ A writing need not contain a metes and bounds property description to be enforceable, but it must furnish the data to identify the property with reasonable certainty. *Tex. Builders,* 928 S.W.2d at 481 (citing *Morrow,* 477 S.W.2d at 539). An unidentified portion of a larger, identi-

fiable tract is insufficient to satisfy the statute of frauds. *Id.* at 482. "The legal description in the conveyance must not only furnish enough information to locate the general area as in identifying it by tract survey and county, it need contain information regarding the size, shape, and boundaries." *Reiland v. Patrick Thomas Properties, Inc.*, 213 S.W.3d 431, 437 (Tex. App.-Houston [1st Dist.] 2006, pet. denied) (citing *Morrow*). "When ... from the description given, it is reasonably possible to locate more than one tract of land fitting that description, the statute of frauds is not satisfied." *Butler v. Benefield*, 589 S.W.2d 778, 780 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.).

**B. The language of the letter agreement**

█ In five issues, appellants argue the trial court erred in concluding the Letter Agreement did not satisfy the statute of frauds. Central to all of appellants' issues is the contention that the letter agreement is sufficient to identify the property with reasonable certainty. We begin our review with an examination of the terms of the letter agreement.

The letter agreement itself contains several references to "acreage" in Leon County, Texas. The first reference, in the recitals, is to the parties' desire to enter into an agreement "to acquire mineral rights on acreage in Leon County, Texas from Norman Powell and Mary Bormann (Formerly Mary Powell)." Next, the letter agreement purports to assign "all the mineral rights and a 100 acre spacing centered around the David Morris Gas Unit # 1 in Leon County, Texas." The letter agreement also provides, "[t]he acreage referred to within this agreement is better described in the Exhibit A attached to this agreement and made a part of this agreement."

There is no dispute that Exhibit A provides an adequate description of four tracts totaling 563.475 acres in Leon County, Texas, or that the four tracts are the Powell/Bormann acreage referenced in the recitals. It is also undisputed, however, that the interest conveyed in the letter agreement does not follow the boundaries of the four tracts.

Nor is it disputed that the four tracts have boundaries different from the "David Morris Gas Unit." The parties agree that the unit is adequately described, but dispute whether the reference in the letter agreement to the "David Morris Gas Unit # 1" is a reference to the unit itself, or to a well bore located within the boundaries of the unit. The evidence introduced at trial showed that there was a designation of a "David Morris Gas Unit" recorded in the county records of Leon County, describing a tract of land in a rectangular shape of 216.42 acres. The evidence also showed there is a "Well No. 1" associated with the David Morris Gas Unit. In finding of fact 13, unchallenged by appellants, the trial court found, "There is no reference to a 'David Morris Gas Unit # 1' in the Records of Leon County, Texas. Texas Railroad Commission records refer to a 'David Morris Gas Unit,' 'Well No. 1.'"

Appellees argue that the letter agreement's reference to the "David Morris Gas Unit # 1" is a reference to the well rather than the unit. The letter agreement uses the term "unit" four times, twice referring to "the unit," once referring to "the David Morris Gas Unit," and once referring to "the David Morris Gas Unit # 1." Appellants, on the other hand, contend that every reference in the letter agreement is to the unit, not to the well. The trial court also found, and appellants do not challenge, that the David Morris Gas Unit's 216.42-acre area is not contained entirely

within the 563.465 acres described in Exhibit A to the letter agreement.

It is also undisputed that there is no document further identifying "a 100 acre spacing centered around the David Morris Gas Unit # 1" as described in the letter agreement. There is no information in any document about the shape or boundaries of the 100 acres. Appellants contend it is a rectangle surrounding the David Morris Gas Unit on all four sides, as a "picture frame," and offered Morgan's expert testimony to that effect. The trial court noted Morgan's admission that either a square or a rectangular halo would be properly "centered around" the unit. The trial court further found that neither of Morgan's configurations would convey the one hundred acres specified in the letter agreement:

> In addition, according to the Letter Agreement's terms, both of these 100 acre shapes centered around the Unit include mineral interests other than those 563.465 acres from which some hundred acre spacing was purportedly to be conveyed. As demonstrated by Plaintiff's Exhibit 8, any attempt to convey mineral rights that were both (i) within either of the shapes in paragraphs 18–19 above that are centered around the Unit and (ii) within the 563.465 acres identified in the Letter Agreement could not possibly result in a conveyance of a 100 acre spacing. (Finding of Fact 19).

Appellants counter with the well-settled proposition that a conveyance can pass no greater interest than that owned by the grantor, citing *Cockrell v. Texas Gulf Sulphur Co.*, 157 Tex. 10, 15, 299 S.W.2d 672, 675 (1956), and *Johnson v. Conner*, 260 S.W.3d 575, 579 (Tex.App.-Tyler 2008, no pet.), and conclude that the letter agreement's description is reasonably certain even if less than 100 acres may be con-

veyed under it. While we agree Buck could convey no more than what he owned, an interpretation of the letter agreement that would result in a conveyance of less than the agreed-upon acreage provides less "reasonable certainty" about the size, shape, and boundaries of the property to be conveyed than an interpretation that would result in a conveyance of 100 acres. *See Reiland,* 213 S.W.3d at 437.

Under the rules stated in *Morrow, Reiland,* and *Butler,* we conclude the description of the property in the letter agreement does not meet the requirements of the statute of frauds. The terms of the letter agreement give rise to several possible configurations of tracts that may be said to be "identified" by the letter agreement, existing writings referenced therein, or both. As a result, we conclude that the tract of land to be conveyed under the letter agreement cannot be identified with reasonable certainty. *See Morrow,* 477 S.W.2d at 539 (writing must furnish data to identify property with reasonable certainty); *Reiland,* 213 S.W.3d at 437 (legal description must contain information regarding size, shape, and boundaries); *Butler,* 589 S.W.2d at 780 (statute of frauds not satisfied when from description given, it is reasonably possible to locate more than one tract of land fitting description); *see also Tex. Builders,* 928 S.W.2d at 481 (unidentified portion of a larger, identifiable tract insufficient to satisfy the statute of frauds); *Fears,* 247 S.W.3d at 737 (description of property as "off the west end," even when main property adequately identified, not sufficient to determine location or boundaries with reasonable certainty). The trial court correctly determined that the letter agreement does not satisfy the statute of frauds. We next consider appellants' complaints of error by the trial court in reaching its conclusion.

## C. Consideration of evidence other than the letter agreement

█ In their first issue, appellants argue the trial court applied an erroneous legal standard by considering extrinsic evidence in addition to the language of the letter agreement itself. In their fourth issue, appellants contend the trial court erred by considering May's deposition testimony about the letter agreement. We consider these issues together.

May testified that his 100 acres would be determined from the well bore. Over appellants' objection, May's deposition testimony was read into the record by appellees at trial:

Q. All right. Tell me, how would you determine where the hundred acres are?

A. Well, it says—in the contract.

Q. Yeah. Okay.

A. It's pretty specific.

Q. Okay. Tell me what it—

A. It says 100 acres centered around, which means right in the center, right in the middle. Here's the wellbore. We know where the wellbore is.

Q. Right.

A. And 100 acres around that, whether it's a circle or a square.

Q. I was going to say, can it be a circle or could it be a square—

A. It can be—

Q. I guess it could be an oblong?

A. Could be. But in general you would lease for land purposes. They usually draw it as a square.

Q. As a square?

A. Because you can describe it real simply.

Appellants contend that May's understanding or intent regarding the meaning of the agreement was irrelevant to whether the property description is sufficient under the statute of frauds. They further contend both Elbert (appellees' expert) and the trial court impermissibly relied on May's testimony in reaching their conclusions, citing to Elbert's testimony that the 100 acres could be centered around the well bore, and the trial court's finding of fact 8 that "Mr. May, testifying by deposition, testified consistently with Plaintiff's Second Amended Original Petition, stating that the 100 Acre Spacing was to be centered around the David Morris # 1 wellbore."

The court in *Morrow* explained that "the knowledge and intent of the parties will not give validity to the contract" under the statute of frauds. *Morrow*, 477 S.W.2d at 540. The court further explained:

The correct rule relating to admissibility of parol evidence to aid descriptions in contracts for the conveyance of land is thus stated in *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945):

"The certainty of the contract may be aided by parol only with certain limitations. The essential elements may never be supplied by parol. The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum. *O'Herin v. Neal*, Tex.Civ.App., 56 S.W.2d 1105, writ refused." (Emphasis ours.)

*Id.* at 540–41. In *Morrow*, the court noted that "[t]he record leaves little doubt that the parties knew and understood what

property was intended to be conveyed," but concluded that evidence of their understanding or intent was not admissible. *Id.* at 540. As in *Morrow*, May's clear understanding of the conveyance cannot substitute for a writing providing "the means or data by which the land to be conveyed may be identified with reasonable certainty." *Id.* at 539. Here, however, the trial court and Elbert did not use May's testimony to identify the land with reasonable certainty. Instead, they did quite the opposite, noting that May's testimony supported their conclusion that the letter agreement did *not* identify the land with reasonable certainty.

■ Even if the trial court's admission of May's testimony was in error, however, we conclude it did not cause the rendition of an improper judgment. *See Owens–Corning Fiberglas Corp.*, 972 S.W.2d at 43. Without considering May's testimony, both the trial court and Elbert could have concluded that one reasonable interpretation of the letter agreement, among others, was to center the 100 acres around the well bore. The letter agreement itself used a unique reference to the "David Morris Gas Unit # 1," in contrast to three other references only to the "unit," without any number. There was also undisputed evidence that there is a "David Morris Gas Unit" and a "Well No. 1," but no "David Morris Gas Unit # 1." Because May's testimony was cumulative, its admission did not cause the rendition of an improper judgment. *See Marling v. Maillard*, 826 S.W.2d 735, 740 (Tex.App.-Houston [14th Dist.] 1992, no writ) (even if testimony improperly admitted, error was harmless because testimony was cumulative). We overrule appellants' first and fourth issues.

## D. Expert's purported admissions

■ In their second issue, appellants contend the trial court erred in concluding as a matter of law that the letter agreement violated the statute of frauds when appellees' own expert admitted that the property described in the letter agreement could be described with reasonable certainty. Appellees argue that appellants have taken a small portion of the expert's testimony out of context. After reviewing the entire record, we conclude that Elbert testified to several possible configurations of the 100 acres, all of which he found to be reasonable based upon the language of the letter agreement, the relevant records, and his professional expertise. While he did agree Morgan's opinion of the configuration was reasonable, he also testified without reservation that he could not determine from the letter agreement itself or from the property records of Leon County the metes and bounds description of only one tract constituting a 100–acre spacing around the David Morris Gas Unit. This testimony supports the trial court's findings and conclusions that the 100–acre spacing could not be identified with reasonable certainty. We overrule appellants' second issue.

## E. Ambiguity

■ In their third issue, appellants contend the trial court erred by concluding as a matter of law that the letter agreement was ambiguous "when no party argued that the Letter Agreement was ambiguous in any way and Defendants' expert acknowledged that he could read and understand the terms of the Letter Agreement." Appellants argue that appellees "waived their ambiguity defense" by failing to plead ambiguity or offer evidence that the letter agreement was ambiguous. Appellants rely on the well-settled proposition that matters not raised in the trial court are not preserved for appellate consideration. *See, e.g.*, Tex.R.App. P. 33.1 (as prerequisite to appellate review, record must show complaint was made to trial court and ruled upon).

We disagree with appellants' argument that the trial court could not consider whether the letter agreement was ambiguous. Deciding whether a contract is ambiguous is a question of law for the court. *Sage Street Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex. 1993). "A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party." *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 56 (Tex.App.-Dallas 2006, pet. denied) (citing *Sage Street*); *see also J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 231 (Tex.2003) (citing *Sage Street*); *Coker v. Coker,* 650 S.W.2d 391, 394–95 (Tex. 1983) (agreement ambiguous even though both parties asserted agreement was unambiguous, and trial court and court of appeals agreed it was unambiguous). We overrule appellants' third issue.

**F. Admission in pleadings**

In their fifth issue, appellants contend the trial court erred by finding that their second amended petition purported to limit the interest conveyed in the letter agreement to an area centered around the well bore rather than around the unit on which the well was drilled.

In paragraph 32 of their second amended original petition, appellants alleged that because Buck did not perform under the Letter Agreement, they were unable to acquire an interest in "the mineral acreage associated with the David Morris Gas Unit # 1, as well as the lawful right to develop the valuable gas reserves associated with the Morris Reef by re-entering and re-completing the David Morris Gas Unit # 1 well bore." In finding of fact 7, the trial court quoted a portion of this allegation, and found that "[p]aragraph 32 ... takes the position that the phrase the 'David Morris Gas Unit # 1' refers to the David

Morris # 1 well." In the same finding, the trial court further stated, "[w]ere the Letter Agreement's 100 acre spacing located in some shape 'around' the David Morris Gas Unit, such a spacing would be at no point less than 1500 feet from the well bore."

Appellants argue that nothing in paragraph 32 or any other part of their petition purports to limit the interest conveyed by Buck to May in the letter agreement to an area centered around the well bore of a particular well. As we noted in our consideration of appellants' first and fourth issues, the trial court's findings that the letter agreement's property description is open to multiple interpretations is supported by the language of the letter agreement itself as well as the evidence offered by the parties. Even if appellants' petition cannot be construed to refer to the well bore rather than the unit, the language of the letter agreement itself and the evidence presented at trial support the trial court's conclusion that the property could not be identified with reasonable certainty. We overrule appellants' fifth issue.

**CONCLUSION**

Because the Letter Agreement did not "furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty," *Morrow,* 477 S.W.2d at 539, judgment for appellees was proper. We overrule appellants' issues and affirm the trial court's judgment.