**Affirmed and Opinion Filed April 17, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01641-CV

**GARY M. KORNMAN, Appellant**
**V.**
**DENNIS S. FAULKNER, TRUSTEE, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-08489**

## MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Francis

Gary Kornman filed a declaratory judgment seeking to have his residence and personal property located in the residence declared exempt from execution by Dennis Faulkner, the trustee appointed by the United States Bankruptcy Court. After a two-day bench trial, the trial court declared Kornman's residence his homestead and entitled to exemption, but declared all of the personal property located inside non-exempt and subject to execution. In six issues, Kornman generally contends there is legally and factually insufficient evidence to support the trial court's ruling that his personal property was not exempt, and the trial court erred by disregarding evidence the nonexempt personal property was encumbered by a federal tax lien and by declaring Faulkner was entitled to turnover relief. We affirm.

Heritage Organization, L.L.C. provided estate, business, tax, and asset planning. Kornman served as CEO and sole shareholder of Heritage. A number of Heritage clients implemented a sheltered tax investment strategy under the advice of Heritage. When these clients were audited by the Internal Revenue Service, the transactions were disallowed, and the clients were required to pay the sheltered taxes, along with penalties and interest on the taxes; in turn, many of these clients sued Heritage and Kornman. In May 2004, Heritage filed for relief under Chapter 11 of the bankruptcy code. Faulkner was appointed trustee by the United States Bankruptcy Court for the Northern District of Texas and, two years later, filed an adversary proceeding against Kornman and others alleging, among other things, that Kornman had engineered fraudulent and preferential transfers to himself and related entities prior to Heritage's bankruptcy filing. Following trial, the bankruptcy court entered judgment against Kornman, holding him personally liable for over $10 million.

In March 2010, Faulkner registered the final judgment in the United States Bankruptcy Court for the Southern District of Texas and began efforts to collect on the judgment. He filed an application for turnover order in the bankruptcy court, requesting Kornman be required to list any claimed exemptions and that the bankruptcy court determine the validity of those claims. Kornman eventually filed a list of all items he claimed were exempt but then filed a request for declaratory judgment in state district court seeking (among other things not relevant to this appeal) a declaration that his 5800-square-foot house in University Park and all personal property contained in the house were exempt from execution. In his first amended petition, Kornman included the fourteen-page list filed with the bankruptcy court containing the items he claimed were exempt under the Texas Property Code. In addition to general descriptions of individual assets in the house, the list contains general categories of items.

Faulkner filed his counterclaim for declaratory relief. During trial, the parties agreed that the bankruptcy court had issued a turnover order and the only remaining issue was whether the assets Kornman held were exempt or nonexempt. Following a bench trial, the trial court ordered all of the personal property located at Kornman's residence was non-exempt and subject to execution; however, the court concluded Kornman's residence was his homestead and entitled to exemption. After the trial court filed findings of fact and conclusions of law, Kornman filed this appeal.

In his first three issues and issue five, Kornman contends there is legally and factually insufficient evidence to support the trial court's judgment, the trial court misinterpreted sections 42.001 and 42.002 of the property code by concluding he was not entitled to any exemption on his personal property, and the trial court erred by concluding certain assets belonged to Kornman when he testified they belonged to others, including his mother's estate and his children.

A trial court's findings have the same force and dignity as a jury's verdict. *May v. Buck*, 375 S.W.3d 568, 573 (Tex. App.—Dallas 2012, no pet.). When a complete reporter's record is filed, we review the trial court's fact findings for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

When a party challenges the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established the facts in his favor as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We first examine the record for evidence to support the finding. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 807 (Tex. App.—Dallas 2011, no pet.). If there is no evidence to support the finding, we then examine the entire record to determine if the contrary position is established as a matter of law. *Id*. We indulge every reasonable inference to support

the judgment, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. We must consider and weigh all of the evidence; we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

We do not review a trial court's conclusions of law for factual sufficiency but evaluate them independently, determining whether the trial court correctly drew the legal conclusions from the facts. *See Dallas Morning News Co. v. Bd. of Trs.*, 861 S.W.2d 532, 536 (Tex. App.—Dallas 1993, writ denied). Incorrect conclusions of law will not require a reversal if the controlling findings of fact will support the judgment under a correct legal theory. *May*, 375 S.W.3d at 573.

Personal property, as set out in section 42.002 of the property code, is exempt from garnishment, execution, attachment, or seizure if the property is provided for a family and has an aggregate fair market value of not more than $60,000. TEX. PROP. CODE 42.001(a)(1), .002(a) (West 2000 & Supp. 2013). Once a judgment creditor traces assets to the judgment debtor, a presumption arises that those assets are in the debtor's possession and the burden then shifts to the debtor to account for those assets. *Pillitteri v. Brown*, 165 S.W.3d 715, 722 (Tex. App.—Dallas 2004, no pet.). If the judgment debtor claims an asset is exempt, he has the burden to prove the exemption. *Id.* at 722−23; *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 324 (Tex. App.—Dallas 1997, writ denied).

Kornman did not have an expert witness or expert testimony at trial. The only evidence he presented was his testimony that he believed all the items listed were exempt and were worth approximately what he had listed in his original amended petition. Each asset listed had a general description, such as "Mirror," identified the room in which it was found, and had a stated value. Kornman's trial testimony consisted of reading the list, line by line, and generally confirming that the valuation assessed for each asset was correct at the time the list was made. He noted, however, the values had "changed since then." When asked for further detail about particular assets, Kornman was unable to give any, including being unable to tell when he bought any of the assets in his house. He claimed, however, "nothing has been purchased within the last 10 years."

Many categories lacked any specific or useful details. With respect to his category "Miscellaneous Personal items including but not limited to the following: Shoes, clothing, coats, hats, gloves, boots, grooming items," Kornman simply stated $450 was a fair market value assessment. There was no evidence to establish how many clothing items he owned, let alone any information to establish value of these assets. Likewise, he testified without specifics that the "Miscellaneous sporting equipment, including but not limited to . . . Fishing equipment, camping equipment, golf equipment" was worth $200 and his miscellaneous "consumable items" such as "Food, spices, liquor, liqueurs, cleaning supplies" was worth $100. As was the case with the home furnishings, Kornman failed to provide any details or specifics of the items contained in these categories.

During cross-examination, Kornman frequently testified specific assets belonged to others, including his children, his wife (who lives in Plano), or his mother's trust; however, when asked, he admitted he did not have any documentation or other evidence to establish the assets were owned by others. When asked about the grounds for claiming certain property as exempt,

Kornman stated his attorneys made the determination and he did not know or understand what section of the property code provided the exemption. He simply listed items and assessed a value, but he believed all assets in his house were exempt and were worth less than $60,000.

Lorrie Semler was hired by Faulkner to perform an appraisal of Kornman's personal assets, excluding opened bottles of wine or spirits, contents of closets (with the exception of those containing safes), cupboards, drawers, boxes, shelving in the garage, and common or ordinary kitchen items. Some of the items that Kornman claimed belonged to others were excluded from her inventory and appraisal, as was business property that Kornman told her was not to be inventoried. Semler noticed many items in the house were not included on the list and were not inventoried or appraised. Semler employed various experts to prepare her report, including art, coin, rug, and wine specialists.

The thirty-eight page report was extensive and detailed, and the valuation provided far exceeded that given by Kornman. For example, Kornman stated he had "Paintings" and he valued them at $4,600. In contrast, Semler described each painting in detail and assessed a total value of over $34,000 for all paintings and prints in the house. Kornman listed the entry way as having five items worth $690; Semler inventoried nine items (excluding all paintings) valued at $2,260. Kornman valued his pen and pencil collection at $2,500 and his jewelry and watches at $255; Semler valued the former at $28,220 and the latter at $415.

Kornman had the burden to establish the items he claimed as his personal property were exempt as well as to present to the trial court evidence of itemized personal property not to exceed $60,000 in value. To do so, he relied on a fourteen-page list purportedly of all the property in his house, divided into general vague categories with little or no detail and unsupportable valuations. Numerous categories or listings which would normally be considered exempt property under the property code (such as "wearing apparel" or "provisions for

consumption") were devoid of any details that would assist the trial court in determining the merits of Kornman's claims, let alone the valuation of such assets. Kornman's failure to provide more specific information as well as his unsupported valuations prevented the trial court from concluding he was entitled to the exemptions. *See In re Wright*, 99 B.R. 339, 342 (Bankr. N.D. Tex. 1989). Furthermore, to the extent he did testify about values of assets, the trial court was the factfinder and, as the sole judge of the witnesses' credibility, could choose to believe or disbelieve Kornman's testimony as well as resolve any conflicts or inconsistencies in the testimony. *See Brauss v. Triple M Holding GmbH*, 411 S.W.3d 614, 621 (Tex. App.—Dallas 2013, pet. denied). Because he offered no evidence to establish his personal property was exempt or the valuation of the property, Kornman has failed to show reversible error. *See Jacobs v. Adams*, 874 S.W.2d 166, 167−68 (Tex. App. —Houston [14th Dist.] 1994, no writ) (appellant not entitled to relief when he offered no evidence to establish his property was exempt). We overrule Kornman's first, second, third, and fifth issues.

In his fourth issue, Kornman contends the trial court should have considered the effect of the federal tax lien for purposes of determining the amount of his exempt property. Kornman's issue is conditioned on our finding that Kornman met his burden to establish some or all of his personal property is exempt. Because Kornman failed to meet that burden, we need not address this issue. *See* TEX. R. APP. P. 47.1. We overrule his fourth issue.

In his final issue, Kornman contends the trial court erred by awarding turnover relief. In his brief, he states it is "unclear whether the trial court actually awarded turnover relief," however, Kornman testified during trial that the bankruptcy court already issued a turnover order. Our review of the record shows that, although the trial court's conclusions of law include the conclusion that the "Trustee is entitled to Turnover Relief," the trial court's order does not order or address turnover relief. We conclude Kornman's final issue lacks merit and overrule it.

We affirm the trial court's judgment.

121641F.P05

/Molly Francis/

MOLLY FRANCIS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GARY M. KORNMAN, Appellant

No. 05-12-01641-CV      V.

DENNIS S. FAULKNER, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-10-08489.
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DENNIS S. FAULKNER recover his costs of this appeal from appellant GARY M. KORNMAN.

Judgment entered April 17, 2014

/Molly Francis/
MOLLY FRANCIS
JUSTICE