**AFFIRMED and Opinion Filed August 31, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-00456-CV**
_____

**GAREN KEITH WYATT, Appellant**
**V.**
**TURBO RESTAURANTS, LLC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-00019**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Goldstein

Garen Keith Wyatt appeals the trial court's judgment, following a jury trial, that he take nothing on his negligence claims against Turbo Restaurants, LLC. In two issues, Wyatt argues the jury's verdict was against the great weight and preponderance of the evidence, and multiple erroneous rulings and improper jury arguments requires reversal under the cumulative-error doctrine. We affirm the trial court's judgment.

## BACKGROUND

On March 7, 2016, Wyatt and his wife purchased a meal at a restaurant operated by Turbo and sat in a booth to eat. As Wyatt exited the booth, he fell to the concrete floor and was injured. In January 2017, Wyatt sued Turbo alleging he was injured when the "unsecured bench seating collapsed beneath him." Wyatt alleged the bench seat was "unsecured and used for storage as well as customer seating" and constituted a dangerous condition, which was known or reasonably should have been known to Turbo. Wyatt asserted premises liability claims and sought damages for medical expenses, physical pain and mental anguish, and physical impairment.

In December 2017, Turbo filed its first amended answer asserting, among other things, enumerated affirmative defenses, theories of comparative responsibility and that Wyatt's claims were barred in whole or in part. Specifically, Turbo asserted 1) Turbo's acts and/or omissions were not the cause of Wyatt's damages; 2) any loss or damage was caused by Wyatt's own conduct; 3) the condition of the premises in question was open and obvious; 4) Wyatt failed to mitigate his damages; 5) Wyatt's claims were the result of an unavoidable accident; 6) Turbo was under no duty to inspect or repair the alleged condition made the basis of Wyatt's suit; 7) the acts and/or omissions alleged by Wyatt were not unreasonably dangerous as a matter of law and/or fact; 8) Wyatt was contributorily/comparatively

negligent; and 9) Wyatt was liable to Turbo for proportionate and comparative responsibility.

By January 2020, Wyatt had filed his fourth amended petition asserting that his injuries occurred "as a direct result of the unsecured bench seating that was proximately caused by the dangerous condition" described in the petition and Turbo was negligent under the theory of res ipsa loquitur because (1) without a negligent act, Wyatt's injury would not have occurred and (2) the instrumentality that caused the injury was exclusively controlled by Turbo.

Prior to trial, Wyatt served a subpoena in an effort to obtain the bench lid seat at issue. Turbo filed for a protective order. At the hearing, Wyatt argued the merits of a subpoena he served for the bench lid seat that Wyatt was sitting on at the restaurant. Wyatt argued he did not want to introduce the seat into evidence but only wanted to use it for "demonstrative purposes." Turbo argued the trial court should grant its motion for a protective order on the grounds that it was overly burdensome to require production of the seat. At the conclusion of the hearing, the trial court granted Turbo's motion for a protective order.

At a jury trial in February 2020, Dustie Johnson testified she was the shift manager at the restaurant at the time of the underlying incident. Johnson testified the booth Wyatt sat in was hollow with a lid, utilized as a storage compartment for cleaning supplies. Johnson testified this was true of "any of the booths," and "they

were made for that." When shown a picture of the booth at issue, Johnson confirmed that the booth had braces to prevent the seat from sliding, and she testified that she did not know of anyone at the restaurant that "ever went in there and checked the safety of these braces." When questioned, Johnson agreed the seat "came loose somehow" and "became detached."

Steve Condit, the general manager of the restaurant at the time of the incident, testified that all the booth seating in the restaurant is used for the dual purpose of customer seating and potential storage. Condit testified the wooden braces on the seat lid were installed by a manufacturer and then shipped to the restaurant. Condit confirmed that the bench seat at issue was missing a "long brace" and a "lip brace" after the accident. Condit assumed the braces "broke off." Condit agreed the seat lid was "pretty heavy" and after the accident he repaired a "small brace" that went into a lip and prevented the lid "from going up and down." Condit testified he placed three screws into the brace and reattached it to the booth seat. After the repair, Condit tried to reproduce the accident by "jumping around" in the booth, but he could not "get it to flip." Condit also agreed that "the bench seat lid could not have slid out if the braces were in place, secure, maintained and working correctly." Condit stated he opened five new restaurants and operated restaurants that were "really old," and they had the same dual-purpose booths. Condit attested that he

"never had a problem with those booths" and never had any other customers injured inside the restaurant.

Gary Jackson, a forensic engineer, testified by video deposition that he conducted a site inspection at the restaurant on August 17, 2017. Jackson determined that the bench seating had two parts: "a secured base to the floor, and then a lid with upholstered seating that sat on top of the base." Jackson testified the lid involved in the underlying accident had a "missing outside long big brace," and the "incident would not have occurred but for the fact that a brace was missing." After the incident, the lid had a "broken small brace" that Condit "flipped around and resecured with three screws." When asked how the seat cushion came off the bench, Jackson testified that, without the outer brace, the seat cushion could slide from its position and extend out over the edge of the booth. At that point, putting weight on the extended portion could cause the cushion to rotate upward. Jackson did not test the seat cushion to see whether it moved when it was placed on the bottom portion of the booth. Jackson testified that, although Phillips-head screws were used to make repairs to the underside of the bench seat, "square-drive screws were the ones that were on everywhere else, and those were broken off." In Jackson's report, he concluded the "design and construction of the bench seat

assembly was deficient in the number and/or strength of fasteners used to attach the plywood . . . ."[1]

Wyatt's wife, Kathy, the only eyewitness to the event, described the incident as follows:

> So Garen was here and he slid to the end of the bench. And he put a hand on the table and then his hand on the seat to lift himself up out of the seat, to raise up out of the seat. And when he did, the whole seat come up, hit him, and he fell on the floor.

Kathy testified Wyatt's shoulder and head were hit by the seat, and he hit his head on the tile floor of the restaurant. Wyatt lay on the floor, he was shaking like he was very cold, and his eyes were rolled back in his head. At that point, Kathy "hollered for the lady to call 911." Wyatt was taken to the hospital where he was diagnosed with a head injury.

Wyatt testified he remembered "absolutely nothing" about the accident. The first thing Wyatt remembered after the accident was being in the hospital. Wyatt saw his wife come into the hospital and stand by his bed, and he did not "remember maybe even the next couple of days."

On cross-examination, defense counsel showed Wyatt a line from his medical records that stated, "Per EMS report," he was at the restaurant when he "stood up" and "took the bench with him and fell with the bench." Wyatt testified he did not

---

[1] Jackson did not speak with Wyatt about the accident.

know whether that description of events was accurate. Counsel confirmed that Wyatt had spoken to his wife about what happened, but he did not recall whether his wife "ever described the bench as having collapsed" when Wyatt was sitting on it. Wyatt also testified he was "not aware of anyone ever referring to the bench as collapsing in any way." Without identifying the document, counsel showed Wyatt a prior pleading that Wyatt read, but Wyatt testified the document did not refresh his recollection "as to whether or not there's ever been a reference as to whether or not the seating had collapsed." Wyatt testified it was "pretty obvious the bench didn't collapse" because it was "whole when everybody found it." Following a discussion outside the presence of the jury, the trial court admitted the prior pleadings, Wyatt's first two petitions, over Wyatt's objections.

Wyatt's counsel moved to introduce Turbo's interrogatory responses either as physical evidence or by being read into the record. Counsel argued she did not need a witness to testify in order to admit the interrogatory responses. Turbo's counsel objected that the interrogatories could not be introduced into evidence unless a witness subject to cross-examination was questioned under oath about an answer and affirmed that everything in the answer was true; at that point, the interrogatory answer would become competent evidence. The trial court sustained Turbo's objection.

Only Turbo's negligence as to the condition of the premises was submitted to the jury. No contributory negligence question was included in the jury charge. During the charge conference, Wyatt requested that an instruction on res ipsa loquitur be included in the court's charge. Turbo objected, arguing that a res ipsa loquitur instruction is "reserved for cases where the evidence can only basically allow the jury to just infer that because an accident happened, it had to be the defendant's negligence." The trial court sustained Turbo's objection to the instruction.

During closing arguments, Wyatt argued this lawsuit was not against the particular restaurant where the incident occurred but was "a lawsuit against Turbo Restaurants LLC, that owns 650" restaurants. Outside the presence of the jury, Turbo objected that Turbo did not own 650 restaurants, and that fact had not been entered into evidence. Turbo asked the court to instruct the jury that it should not consider counsel's statement in their deliberations. The trial court sustained Turbo's objection and stated that "the instruction will be provided to the jury." The trial court subsequently instructed the jury as follows:

> [P]laintiff's counsel represented that Turbo Restaurants, LLC, owns 650 restaurants. That was an inappropriate argument, and counsel's statement should not be considered in your deliberations.

The jury returned a verdict in favor of Turbo, answering "No" the question whether the negligence, if any, of Turbo proximately caused the occurrence or injury

in question. On March 4, 2020, the trial court signed a judgment providing that Wyatt take nothing. Wyatt filed a motion for new trial, which the trial court denied. This appeal followed.

## ANALYSIS

### I. Legal and Factual Sufficiency Challenge

In his first issue, Wyatt challenges the legal and factual sufficiency of the evidence to support the jury's verdict. Wyatt argues the jury's verdict was against the great weight and preponderance of the evidence such that it was clearly wrong and manifestly unjust and, as a matter of law, the evidence conclusively established that Turbo's negligence caused the harm to Wyatt.

When an appellant challenges the factual sufficiency of the evidence supporting an adverse finding on an issue on which the appellant had the burden of proof, it must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We must consider and weigh all of the evidence, and we set the finding aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that the finding is clearly wrong and unjust. *Id.*

When an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it had the burden of proof, it must demonstrate

that the evidence establishes, as a matter of law, all vital facts in support of the finding sought. *Id.* at 241. In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.* The evidence is legally sufficient if it suffices to enable reasonable and fair-minded people to reach the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In conducting our review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822. We must credit evidence favorable to the finding if a reasonable person could, and we must disregard contrary evidence unless a reasonable person could not. *Id.* at 827.

The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761(Tex. 2003); *see also City of Keller*, 168 S.W.3d at 819. The jury may believe one witness and disbelieve another and resolves any inconsistencies in any witness' testimony. *City of Keller*, 168 S.W.3d at 819; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). A reviewing court may not impose its own

opinion to the contrary. *City of Keller*, 168 S.W.3d at 819; *Golden Eagle*, 116 S.W.3d at 76.

To recover on a premises liability theory, a plaintiff must establish that the injury resulted from a condition of the premises. *Keetch v. The Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *Gillespie v. Kroger Texas, L.P.*, 415 S.W.3d 589, 592 (Tex. App.—Dallas 2013, pet. denied). A plaintiff must prove: 1) actual or constructive knowledge of some condition on the premises by the owner/operator; 2) that the condition posed an unreasonable risk of harm; 3) that the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and 4) that the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). An owner or occupier is not an insurer of injuries to its invitees[2]. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000). Instead, the duty owed by an owner or occupier is to exercise reasonable care to protect against dangerous conditions on the premises that create an unreasonable risk of harm which it knew about, or by the exercise of reasonable care, would have discovered. *Id.*

The threshold requirement for a premises liability claim is the existence of actual or constructive knowledge of a condition on the premises. *See Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). "An owner/occupier cannot breach a

---

[2] It is undisputed that Appellant was an invitee.

duty that it does not owe, and it does not owe a duty to correct an alleged dangerous condition of which it is not aware." *Id.* at 4.

Wyatt argues "the circumstances of the case are such that the outcome cannot be that no one was negligent." In making this argument, Wyatt asserts he "conclusively established all elements necessary to prevail on his premise-liability claim." We disagree.

Here, Wyatt testified he remembered "absolutely nothing" about the accident. Wyatt's wife testified Wyatt slid to the end of the bench and, when he put a hand on the table and a hand on the seat, "the whole seat come up, hit him, and he fell on the floor." Jackson testified that, without the outer brace, the seat cushion could slide from its position and extend out over the edge of the booth and putting weight on the extended portion could cause the cushion to rotate upward.

Nevertheless, the jury was free to disbelieve this version of events and conclude that Wyatt simply fell out of the booth all on his own, and the bench seat was not a contributing factor to his fall. *See City of Keller*, 168 S.W.3d at 819. Moreover, even if the jury believed, as Wyatt's wife testified, that the booth seat came up and hit Wyatt, the jury could have believed that Turbo did not have actual or constructive knowledge of the condition of the booth seat. *See Lopez*, 929 S.W.2d at 3. In his report, which Turbo pointed out to the jury, Jackson concluded the design and construction of the bench seat assembly was deficient in the number and/or

strength of fasteners used. Jackson also testified there were "square-drive screws" that were broken off on the underside of the bench seat. Condit testified he "never had a problem with those booths" and never had any other customers injured inside the restaurant. In fact, the evidence showed that the same bench seat involved in Wyatt's accident was still in use at the restaurant at the time of Jackson's site inspection. From this evidence, the jury could have believed either that a design defect unknown to Turbo existed in the booth's construction or that the screws on the underside of the bench seat were not broken off until Wyatt slid across the seat immediately before his fall. *See City of Keller*, 168 S.W.3d at 819. In the absence of evidence that Turbo had actual or constructive knowledge of a dangerous condition on the premises, the evidence is legally and factually sufficient to support the jury's finding that no negligence on the part of Turbo proximately caused the occurrence or injury in question. *See id.* at 827; *Dow Chem. Co.*, 46 S.W.3d at 242. We overrule Wyatt's first issue.

## II. Cumulative Error Challenge

In his second issue, Wyatt argues the trial court's multiple erroneous rulings, in conjunction with Turbo's counsel's improper jury argument outside the record and the trial court's admonishment of Wyatt's counsel, require reversal under the cumulative error doctrine. Specifically, Wyatt complains of (1) the trial court's granting of Turbo's protective order denying Wyatt the "right to show the jury the

instrumentality that was the basis of the lawsuit"; (2) the introduction of two superseded petitions but the refusal of Wyatt's request to introduce a superseded answer describing the dangerous condition as "open and obvious"; (3) the refusal to include a res ipsa loquitur definition in the jury charge; and (4) the trial court's refusal to instruct the jury to disregard Turbo's counsel's representation that Turbo is a single restaurant and admonishment to Wyatt's counsel that the response to this statement was "inappropriate."

Texas courts recognize the doctrine of cumulative error, wherein a reviewing court may reverse a lower-court judgment when the record shows a number of instances of error, "no one instance being sufficient to call for a reversal, yet all the instances taken together may do so." *Gregory v. Chohan*, 615 S.W.3d 277, 314 (Tex. App.—Dallas 2020, pet. filed) (quoting *Sproles Motor Freight Lines, Inc. v. Long*, 140 Tex. 494, 168 S.W.2d 642, 645 (1943)). To support reversal based on cumulative error, a complaining party must show that "based on the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to it." *Id.* (quoting *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 570 (Tex. App.—Houston [1st Dist.] 1996), aff'd, 972 S.W.2d 35 (Tex. 1998)). To make that determination, this Court considers all errors in the case along with the record as a whole to determine if the errors collectively were calculated to cause and probably did cause the rendition of an improper judgment. *Lakeside Vill.*

*Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 46–47 (Tex. App.—El Paso 2017, pet. denied). When there are no errors to be considered as a combined whole for purposes of evaluating harm, we reject cumulative error arguments. *Chohan*, 615 S.W.3d at 314 (citing *In re BCH Dev., LLC*, 525 S.W.3d 920, 930 (Tex. App.—Dallas 2017, orig. proceeding). Therefore, before errors can be cumulated, they must first be shown to exist. *In re E.R.C.*, 496 S.W.3d 270, 281 (Tex. App.—Texarkana 2016, pet. denied). The cumulative error doctrine "has found little favor with appellate courts." *Id.*

"A trial judge may exercise discretion in the granting of a protective order and in controlling the nature and form of discovery." *Killingsworth v. Hous. Auth. of City of Dallas*, 447 S.W.3d 480, 496 (Tex. App.—Dallas 2014, pet. denied) (quoting *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 466 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Here, Wyatt's counsel did not seek to introduce the bench seat lid into evidence but sought its production for "demonstrative purposes." Counsel conceded she had "preserved pictures of the bench," but she stated she "want[ed] the jury to see it live at trial." The record shows that Jackson, Wyatt's forensic engineer, was able to conduct a site inspection at the restaurant and viewed the bench seat lid in question. Jackson testified extensively via video deposition concerning his theory of how the accident happened. In support of Jackson's testimony, Wyatt introduced multiple photographs showing the bench seat lid from

various angles. Thus, even without production of the actual bench seat lid at trial, Wyatt was not prevented from offering extensive evidence concerning the construction and condition of the bench seat and its alleged failure that resulted in Wyatt's fall. Under these circumstances, we conclude the trial court did not abuse its discretion in granting a protective order preventing the production of the bench seat lid at trial. *See id.*

Wyatt next complains that he was cross-examined about a superseded pleading before his counsel was permitted to see the pleading, and the resulting harm continued throughout the trial and into closing argument. Wyatt first points out that he has no memory of how the underlying accident occurred. Next, he describes Turbo's counsel's questioning of him concerning whether there had ever been a reference to the seating collapsing and showing him a superseded pleading to refresh his recollection. Wyatt then argues that Turbo's counsel did not comply with rules of evidence 612 and 613 because Wyatt had no memory of the incident, and his memory therefore could not be refreshed, and use of the superseded pleading as a prior inconsistent statement for impeachment purposes required that Turbo's counsel show the document to Wyatt's counsel. *See* TEX. R. EVID. 612, 613(a)(2).

To the extent Wyatt complains of the trial court's decision to admit or exclude the superseded pleading, the decision whether to admit or exclude evidence is committed to the sound discretion of the trial court. *City of Brownsville v. Alvarado*,

897 S.W.2d 750, 753 (Tex. 1995). "A trial court's evidentiary ruling must be upheld if there is a legitimate basis for it." *May v. Buck*, 375 S.W.3d 568, 573–74 (Tex. App.—Dallas 2012, no pet.) (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). Even if the exclusion or admission of evidence is found to be an abuse of discretion, it does not warrant reversal unless the error probably caused the rendition of an improper judgment. *See id.*

Here, although Wyatt did not remember anything about the accident, the record shows Turbo's counsel was not asking him about the accident itself. Instead, Turbo's counsel was asking about a statement contained in a prior pleading. Thus, Turbo's counsel was attempting to refresh Wyatt's recollection concerning the claims made in a prior pleading. When Wyatt testified his recollection was not refreshed, in response to further questioning, Wyatt testified it was "pretty obvious the bench didn't collapse." The trial judge called counsel to the bench, and a discussion followed outside the presence of the jury. Turbo's counsel asserted he was trying to refresh Wyatt's recollection, but he "was about to offer it for impeachment." Wyatt's counsel argued that, when impeaching a witness with a prior inconsistent statement, it must be shown to opposing counsel upon request. Turbo's counsel then offered the two superseded pleadings into evidence. The trial court ultimately overruled Wyatt's objection. Once the jury returned to the courtroom, Turbo's counsel continued with his cross-examination of Wyatt by

asking Wyatt if he was taking blood pressure medication at the time of the accident and inquiring into Wyatt's medical history. Following this questioning, the trial judge once again asked counsel to approach the bench and, after excusing the jury, admitted Wyatt's two superseded pleadings into evidence. During the remainder of his cross-examination, Turbo's counsel did not ask Wyatt about statements in the superseded pleadings about the bench collapsing and did not attempt to impeach Wyatt with any such statements.

Thus, the record shows that Turbo's counsel showed the superseded pleadings to Wyatt to refresh his recollection and was then interrupted by the trial judge. In a discussion outside the presence of the jury, Turbo's counsel stated his intention to impeach Wyatt, but he did not do so in the presence of the jury. Moreover, statements in superseded pleadings are considered admissions by a party-opponent and are not hearsay. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). Under these circumstances, we conclude the trial court did not abuse its discretion in admitting the superseded pleadings. *See Alvarado*, 897 S.W.2d at 753.

Wyatt complains the trial court erred in refusing to admit a prior answer filed by Turbo claiming that the dangerous condition was "open and obvious." Wyatt argues the admission of this prior answer was necessary to refute Turbo's statement in closing argument that Turbo had no knowledge of a dangerous condition. The

answer Wyatt sought to introduce contained a general denial followed by affirmative defenses, including the allegation that Wyatt's claims were barred because the alleged condition of the premises in question was open and obvious." Unlike statements by a plaintiff in a superseded pleading, "[a]n affirmative defensive pleading following a general denial is not a judicial admission." *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 661 (Tex. App.—Dallas 2012, no pet) (quoting *McRoy v. Riverlake Country Club, Inc.*, 426 S.W.2d 299, 303 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.)). Thus, we conclude the trial court did not abuse its discretion in admitting Wyatt's superseded pleadings but refusing to admit Turbo's prior answer. *See Alvarado*, 897 S.W.2d at 753; *Jespersen*, 390 S.W.3d at 661.

Wyatt also argues the trial court abused its discretion in sustaining Turbo's objection to the admission of Turbo's interrogatory responses. Wyatt argues the interrogatory responses would have shown that Turbo "did not contend that any of the damages or injuries made the basis of the suit were not caused by the incident at issue" and that Turbo was the operator of the restaurant where Wyatt was injured. Turbo did not dispute the occurrence of the incident that led to Wyatt's injuries or assert that it was not the owner and operator of the restaurant where the incident occurred. We conclude the trial court did not abuse its discretion in excluding the

interrogatories that would have merely reemphasized these uncontroverted facts. *See Alvarado*, 897 S.W.2d at 753.

Wyatt further complains that Turbo's counsel relied on the superseded pleadings to "invoke the sympathy of the jury" and to show Wyatt had initially sued Condit and pled an amount of damages that would permit him to stay in a particular court. We review the trial court's ruling on an objection to closing argument for abuse of discretion. *In re Commitment of Hill*, 621 S.W.3d 336, 344 (Tex. App.—Dallas 2021, no pet.). Generally, proper jury argument falls into one of these areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to an argument made by opposing counsel, or (4) a plea for the enforcement of a law. *Id.* Counsel must be given great latitude to argue the facts and the issues. *Id.* at 345. Once the superseded pleadings were properly admitted, it was within the trial court's discretion to give Turbo's counsel latitude to argue reasonable deductions that could be drawn from the contents of those pleadings. *See id.* at 134–35.

Wyatt also complains that, during closing argument, Turbo's counsel misrepresented Turbo as a "small single restaurant," and the trial court not only overruled his objection to this "false" argument outside the record but also admonished Wyatt's counsel for "attempting to correct the false representation." Wyatt argues his reference to Turbo owning 650 restaurants was invited by Turbo's

counsel's assertion that Turbo owned only a single restaurant, and the trial court's calling Wyatt's argument "inappropriate" violated his right to a fair trial. The record shows the "650 restaurants" statement was made in response to the following statement by Turbo's counsel:

> So when you make decisions in cases like this, I think [Wyatt's counsel] said, "It's a drop in the bucket." You haven't heard any evidence on that. You haven't heard any evidence about how much money my one Arby's in Saginaw, Texas, makes or how much it can afford or how much it pays its employees. She just threw that in so you'd think, oh, these numbers won't matter to them. They're a company. They're a business. You can just assign a number. It's a, quote, as she said, "drop in the bucket."

We note that Wyatt's counsel did not object to this argument at the time it was made. Further, Turbo's counsel did not make the argument that Turbo owned only one restaurant; the reference can be understood as referring to the one restaurant where an incident occurred. Under these circumstances we conclude the trial court did not abuse its discretion in sustaining Turbo's objection to Wyatt's "650 restaurants" statement and instructing the jury to disregard this "inappropriate" statement. *See id.* at 134–35.

Wyatt complains of the trial court's refusal to include a res ipsa loquitur definition in the jury charge. A plaintiff seeking to apply res ipsa loquitur must establish "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." *Sanders v. Naes*

*Cent., Inc.*, 498 S.W.3d 256, 258 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Jones v. Tarrant Cnty. Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982)). We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). We have already concluded that the evidence in this case showed the accident could have occurred in the absence of negligence, thus defeating the first element required for a res ipsa loquitur instruction. *See Sanders*, 498 S.W.3d at 258. Accordingly, we conclude the trial court did not abuse its discretion in refusing to include a res ipsa loquitur definition in the jury charge. *See In re V.L.K.*, 24 S.W.3d at 341.

Because there are no errors to be considered as a combined whole for purposes of evaluating harm, we reject Wyatt's cumulative error arguments. *See Chohan*, 615 S.W.3d at 314. We overrule Wyatt's second issue.

We affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

200456F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

GAREN KEITH WYATT, Appellant

No. 05-20-00456-CV          V.

TURBO RESTAURANTS, LLC,
Appellee

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-00019.
Opinion delivered by Justice
Goldstein. Justices Pedersen, III and
Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TURBO RESTAURANTS, LLC recover its costs of this appeal from appellant GAREN KEITH WYATT.


Judgment entered this 31st day of August 2022.